[No. 11836. Department Two. June 21, 1915.]

MILWAUKEE TERMINAL RAILWAY COMPANY, *Appellant*, v.
THE CITY OF SEATTLE, *Respondent*.[1]

APPEAL—DECISION—LAW OF CASE—DICTA. Where two issues are
presented, decided by the supreme court, the decision on one issue
cannot be said to be *dictum* merely because the decision might have
rested on the other.

EMINENT DOMAIN—TAKEN OR DAMAGED. The right to make a fill
and slope upon lands abutting on a street, is a "damaging" of the
property, as distinguishable from a "taking," as used in Const., art.
1, § 16; since where both terms are used, "damaged" covers injuries
where there is no direct taking of the land itself.

SAME—COMPENSATION — DAMAGES — EVIDENCE — SUFFICIENCY. In
eminent domain proceedings to condemn the right to fill abutting
lands to support a street, in which the court instructed the jury
that, in determining the damages, it must be assumed that the de-
fendant would have no right to remove the fill, evidence of two ex-
perts that there would be no damage, based on the assumption that
the defendant could remove the fill, is insufficient to sustain a ver-
dict of no damages, as the instruction became the law of the case;
especially where defendant's evidence showed actual damages in a
substantial sum, and the city filed no stipulation conferring upon
the defendant the right to excavate the fill and support the street
by a retaining wall or abutment.

Appeal from a judgment of the superior court for King
county, French, J., entered September 22, 1913, upon a
verdict of no damages, in proceedings to condemn property
for a public improvement. Reversed.

*F. M. Dudley* and *G. W. Korte*, for appellant.

*James E. Bradford* and *Ralph S. Pierce*, for respondent.

CROW, J.—This is a proceeding in eminent domain, insti-
tuted by the respondent, city of Seattle, against the appel-
lant, Milwaukee Terminal Railway Company, a corporation,
to condemn the right to damage real estate for the purpose
of raising the grade of Shilshole avenue. Appellant's prop-

[1] Reported in 149 Pac. 644.

erty, which lies 2.7 feet below the grade of Shilshole avenue, is occupied by a railway track, and consists of a strip of land 15 feet in width, abutting 150 feet in length on the avenue. The city proposes to raise the avenue eleven feet above its present grade, or 13.70 feet above the present surface of appellant's land, making it necessary to construct a slope or fill on appellant's land to support the street when raised. The fill will cover appellant's land to a depth of 13.70 feet along the edge of the avenue, and to a depth of 3.70 feet at the opposite side, 15 feet distant. Upon trial, the jury returned a verdict of no damages, upon which a judgment of condemnation was entered, awarding the city the right to construct the slope or fill. From this judgment, the railway company has appealed.

When ruling upon the admissibility of evidence, the trial judge held that the right to construct the slope, which the city sought to condemn, was a damaging of appellant's property as distinguished from a taking, and appellant's principal contention, predicated on numerous assignments of error, is that the trial judge erred in so holding, for the reason that the construction of the fill and slope is a taking of its property. In support of this contention, appellant argues that *Swope v. Seattle*, 36 Wash. 113, 78 Pac. 607, *Compton v. Seattle*, 38 Wash. 514, 80 Pac. 757, and *Donofrio v. Seattle*, 72. Wash. 178, 129 Pac. 1094, which the trial judge followed in making his ruling, are unsound, and contrary to previous decisions of this court and to the great weight of authority, and that language therein contained, in so far as it seems to support the ruling of the trial court, is dictum.

In *Swope v. Seattle, supra*, we sustained the trial court in holding that the construction of a slope on plaintiffs' property, by removing soil therefrom so as to prevent the earth from sliding into the street, was a damaging as distinguished from a taking, and further said:

"But, even if it was not, we fail to see how plaintiffs were prejudiced, inasmuch as it was for the jury to determine,

from all the facts and circumstances in evidence, the 'just compensation' to which the plaintiffs were entitled by reason of the *acts* and *doings* of the defendants."

So here, we might say that it would perhaps be immaterial whether making the fill and slope on appellant's land would be a taking or a damaging, so long as a jury properly assessed and awarded to appellant just compensation for the acts and doings of respondent. Appellant has, however, devoted the major portion of its brief to a discussion of the question whether its property is being taken or damaged, and we will consider the question thus raised.

In the *Compton* case, the plaintiffs sought to enjoin the city from constructing a slope by the removal of soil from their lots, for the purpose of preventing the lots from falling into the street. They contended that the removal of the earth and the construction of the slope was taking their property as distinguished from damaging. In a former action the city had condemned the right to take a portion of the lots to widen the street, paying $200 therefor, and had also condemned the right to damage another portion not taken, by constructing a slope thereon, paying $1,800 compensation therefor. The judgment in this condemnation proceeding was pleaded by the city as a former adjudication in defense of plaintiffs' injunction suit. The defense of *res judicata* was thus involved, as also was the question whether the construction of the slope was a taking of plaintiffs' property or a damaging only. Language in the opinion, which appellant quotes in its brief, indicates that our decision could have been predicated on the defense of *res judicata* alone, but the question whether the construction of the slope was a taking or a damaging was also an issue in the case clearly raised by the pleadings. Passing on this question, we said:

"Formerly in the constitutions of most of the states, the word 'damage' did not occur, but '*taking*' only was mentioned. Under such constitutions, many courts of the Union, in order to do justice and prevent what might otherwise be

held to be merely *damnum absque injuria* in the eyes of the law, frequently extended the meaning of the word 'taking' beyond its original and strict construction, and applied it to almost any act by which the land of an individual, although not physically taken, sustained a special injury, decreasing its value.  The word 'damaged,' or its equivalent, has, however, during later years been incorporated in the constitutions of many states and is found in our constitution, in § 16, art. 1.  This word certainly has some meaning, as distinguished from the word 'taken.'  In *Swope v. Seattle, supra,* Anders, J., used the following language: 'It appears from the bill of exceptions, as we interpret it, that the plaintiffs claimed at the trial that the removal of the soil taken from the plaintiffs' premises in sloping the margins thereof constituted a taking of property in contemplation of the constitution, and that they were entitled to recover the actual value to them of the earth so removed, together with the damage to the land not taken, which would be caused by the grading of the streets.  The court, however, seems to have ruled that the effect of what the defendants were doing was simply a damage to the plaintiffs' property. And we are inclined to think that the court's ruling was correct.' "

Under the issues presented, we fail to understand how this language can be regarded as dictum.  As we observed in *Savage v. Ash, ante* p. 43, 149 Pac. 325:

"It may be that the case could have been rested on the first ground suggested in the opinion, namely, that the fraud alleged was not proven, but both questions were clearly in the case, and simply because the court decided both does not necessarily mean that the one or the other is dictum."

Whether the language above quoted was dictum or not, we now adhere to the doctrine announced in the *Swope, Compton,* and *Donofrio* cases.

In support of its contention that the construction of the slope will be a taking and not a damaging, appellant cites numerous cases from other jurisdictions, including the following, which are the principal ones supporting its position: *Vanderlip v. Grand Rapids,* 73 Mich. 522, 41 N. W.

677, 16 Am. St. 597, 3 L. R. A. 247; *Grand Rapids Booming Co. v. Jarvis*, 30 Mich. 308; *Broadwell v. Kansas City*, 75 Mo. 213, 42 Am. Rep. 406; *Tegeler v. Kansas City*, 95 Mo. App. 162, 68 S. W. 953; *Pumpelly v. Green Bay Co.*, 13 Wall. 166; *Mosier v. Oregon Nav. Co.*, 39 Ore. 256, 64 Pac. 453, 87 Am. St. 652; *Stearns v. Richmond*, 88 Va. 992, 14 S. E. 847, 29 Am. St. 758. The case last cited, *Stearns v. Richmond*, was decided in 1890, before the Virginia constitution was revised in 1902 so as to include the words "or damaged." An examination of the other cases discloses the fact that they are from jurisdictions where the state constitutions provide only for a taking of property, and do not use the word "damaged" which appears in our constitution, nor other words of similar meaning. In *Vanderlip v. Grand Rapids, supra,* the opinion quotes § 14, art. 18, of the Michigan constitution as follows: "The property of no person shall be taken for public use without just compensation therefor." The Missouri constitution, art. 1, § 16, quoted in *Broadwell v. Kansas City, supra,* provides that: "No private property ought to be taken or applied to public use, without just compensation." The cases which appellant cites, and many others that might be cited, arise under constitutions which use the word "taking," but do not use the word "damaged" found in our constitution. In such cases, the courts, for the purpose of securing justice to owners whose private property had been damaged, applied a broader and more liberal construction to the word "taking" than is necessary in construing our constitution. To accomplish this end, many courts, in construing the word "taking" when used alone, have held that any direct or special injury tending to depreciate the value of private property was a taking, and that the owner was entitled to compensation therefor, thus avoiding an application of the harsh rule of *damnum absque injuria.* It was to avoid the necessity of this liberal construction of the word "taking," and at the same time preserve the rights of owners of private property that, in 1870,

the state of Illinois changed the wording of its constitution so as to include the words "or damaged;" and other constitutions, including our own, which have been adopted since that time, include both terms, "taken" and "damaged." Where both terms are included, the word "damaged" should be held to cover injuries to property where there is no direct taking of the land itself; that is, where the owner is not deprived of title to any of the land, but where the land has been so injured or damaged as to cause a direct loss to the owner. In this case, appellant still owns the fee of the land over which the slope is to be constructed, and can convey the same, or make any use of it which it may desire, subject to the right of the city to maintain the slope.

Appellant insists that our holding in the *Swope, Compton,* and *Donofrio* cases is in conflict with *Parke v. Seattle,* 5 Wash. 1, 31 Pac. 310, 32 Pac. 82, 34 Am. St. 839, 20 L. R. A. 68. The *Parke* case was decided on facts which arose before the adoption of our constitution, and its holding was in line with the leading cases above mentioned, to the substantial effect that an excavation of a street by a city, which caused plaintiff's abutting property to slide into the street, was a taking and an injury for which just compensation should be awarded. Our conclusion is that the trial judge properly held that the right which the city seeks to condemn is a damaging as distinguished from a taking.

Although in this action the city condemned the right to construct a slope which will cover all of appellant's land to a depth varying from 3.70 to 13.70 feet, it has done so without any damages being awarded. This is a peculiar situation, the reason for which appears from an examination of the record. The trial court instructed the jury as follows:

"You are instructed that, in considering the damages, you should not assume that the defendant has the right to excavate or remove any slope which the city, by the payment of the judgment to be entered herein, would acquire the right to place upon defendant's property. It would have no such

right, and it will be your duty to assume, in considering the damages to be awarded, that the city will construct and retain the slope which it seeks in this action to secure the right to construct upon defendant's land."

This instruction, doubtless given at appellant's request, was the law of the case, and should have been controlling upon the jury. The only evidence offered by the city upon which a verdict of no damages could be returned was given by two witnesses, a Mr. Bruskevith and a Mr. Denny, real estate agents, who testified as experts. They each testified that the appellant's property would not suffer any gross damage because of the change of the grade contemplated in this improvement, or because of the construction of the slope. An examination of their testimony, however, shows that each predicated his opinion upon the assumption that the appellant would have the right to remove the slope thus constructed, and would thereby obtain the benefit of a basement under any building which might be erected upon its land. The jury were instructed that appellant could not remove the slope. The evidence of these witnesses, therefore, being predicated upon the theory that the appellant could remove the slope, was not sufficient to sustain a finding to the effect that the appellant sustained no damages; especially in view of the fact that the appellant presented witnesses who testified that its gross damage would be from $3,500 to $4,500.

Appellant interposed a motion to strike the testimony of the witnesses Bruskevith and Denny, and now contends that the trial court erred in denying the same. In view of the instruction above quoted, which became the law of the case, it would seem that this contention should have been sustained. The evidence objected to, if true, was in conflict with the theory upon which the case was tried, and could not possibly sustain a verdict of no damages. Respondent in its brief apparently concedes to appellant the right to remove the slope at any time it may see fit to do so, provided that appellant shall construct a retaining wall to support the street as

raised. Appellant strenuously insists that it cannot interfere with the slope; that the city may prohibit it from removing the same even though a lateral support be provided by a retaining wall or abutment. In support of this contention, appellant cites *Village of Haverstraw v. Erickson*, 124 App. Div. 18, 108 N. Y. Supp. 506, afterwards affirmed in 192 N. Y. 54, 84 N. E. 578, 20 L. R. A. (N. S.) 287, where an injunction was allowed to prevent an abutting property owner from excavating his property and removing the lateral support of a highway. This case scarcely touches the point here involved. In *Bunker v. Hudson*, 122 Wis. 43, 99 N. W. 448, the right of an abutting owner to remove the slope and substitute a retaining wall was apparently recognized, but it was held that, in any event, he must furnish lateral support to the street, and could remove the slope only at his peril. In *Tegeler v. Kansas City, supra*, the court upheld an instruction to the effect that the jury should allow as a measure of damages "the diminution in the market value of the property, unless they found the cost of removing the dirt and building a retaining wall should be less, in which case the latter should be the measure of damages." This was a case where soil deposited by the city in raising the grade of an alley had covered a portion of plaintiffs' lot and had destroyed their fence. Although we find but little authority directly upon this question, it would seem that, when the city condemns the right to construct and maintain slopes upon appellant's land, appellant would not have the right to remove the slope without the consent of the city. It might be that, in the trial of the condemnation action, for the purpose of decreasing appellant's damages, respondent might have filed a stipulation to the effect that it would permit the appellant to remove the slope at any time it saw fit to do so, upon condition that appellant would construct and maintain a sufficient retaining wall or abutment to retain the street at the level to which it had been raised.

In view of the fact that the city has condemned the right
to construct and maintain the slope upon appellant's land,
and that no stipulation was made in the case conferring upon
the appellant the right to excavate the slope at any time and
support the street by a retaining wall or abutment, it would
seem that there was no evidence to sustain the verdict of the
jury that the appellant sustained no damages, especially in
the light of the evidence adduced on behalf of the appellant
to the effect that it was damaged.

The appellant interposed a motion for a new trial, one
ground being that the evidence was insufficient to sustain the
verdict, and now assigns error on the failure of the trial
court to sustain its motion. For the reasons above stated,
it would seem that this motion should be sustained, and that
the trial court erred in denying the same. The judgment is
reversed, and the cause remanded for a new trial.

MORRIS, C. J., FULLERTON, MOUNT, and PARKER, JJ.,
concur.