[No. 18027. *En Banc.* December 15, 1923.]

WILLIAM G. TAFT *et al., Respondents,* v. WASHINGTON
MUTUAL SAVINGS BANK *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS (349)—ALLEYS—VACATION—POWERS OF
CITY—STATUTES—CONSTRUCTION. A city of the first class may vacate
a portion of an alley measured from a horizontal plane sixteen feet
above the surface, indefinitely upwards, without vacating the passage-
way on the surface, under Rem. Comp. Stat., § 9298, authorizing it
to vacate any street "or alley or any part thereof."

SAME (357) — ALLEYS — VACATION — ABUTTING OWNERS — VESTED
RIGHTS. Upon the vacation of a portion of an alley, only those
directly abutting on the portion vacated, or whose rights of access
are substantially affected can complain, since they have no vested
rights except for access, under Rem. Comp. Stat., § 7299, which is
but declaratory of the common law.

TOLMAN, PARKER, FULLERTON, and MITCHELL, JJ., dissent.

Appeal from a judgment of the superior court for
King county, Brinker, J., entered April 30, 1923, in
favor of the plaintiffs, in an action for an injunction,
tried to the court. Reversed.

*Peters & Powell, J. L. Kennedy,* and *Hugh R. Fuller-
ton,* for appellants.

*Byers & Byers,* for respondents.

*Kerr, McCord & Ivey* and *Beebe & Whitcomb, amici
curiae.*

HOLCOMB, J.—Appellant Washington Mutual Sav-
ings Bank, a corporation, is the owner in fee of lot 7,
block 13, C. D. Boren's Addition to Seattle, upon
which is located its bank building, and is also the holder
of a contract to purchase lot 8 in the same block. These
two lots abut on Spring street, and extend from Second
avenue on the east to First avenue on the west, being
separated at the rear of each by an alley extending

[1]Reported in 221 Pac. 604.

through the block from Spring street to Seneca street. The remaining lots in the block, 1 to 6, inclusive, lie northerly of these two, and the rear of each lot in the block abuts upon the same alley. Respondents are the owners of lot 6, which adjoins lot 7 on its northerly side.

The owners of lots 7 and 8, in January last, petitioned the city council of the city of Seattle to vacate "that portion of said alley lying immediately between lots 7 and 8, in block 13, extending indefinitely upward from an imaginary horizontal plane the full width of said alley, and sixteen feet perpendicularly above the center line of said alley as now graded, the purpose being to erect a building on lot 8 similar to the one now on lot 7, extending over and across and connecting the two buildings above the sixteen-foot alley space, which would remain as an alley if the prayer of the petition should be granted.

Such proceedings were had, the regularity of which is not questioned, as resulted in the passage of an ordinance by the city council, which reads:

"An Ordinance vacating a portion of the alley in Block 13 of C. D. Boren's Addition on petition of the Washington Mutual Savings Bank and the Peoples Savings Bank—Whereas there has been filed with the city council of the city of Seattle a petition of the Washington Mutual Savings Bank and of the Peoples Savings Bank (File No. 87874) asking for the vacation of a portion of the alley in Block 13 C. D. Boren's Addition to the city of Seattle, and Whereas at the time and place of hearing on said petition the city council granted said petition in part: Now, therefore, be it ordained by the city of Seattle as follows—

"Section 1. That that portion of the alley in Block 13 of an addition to the town, now city of Seattle, laid out on the claims of C. D. Boren and A. A. Denny and H. L. Yesler, immediately adjoining and between Lots 7 and 8 of said Block 13, except the northerly 10 feet

thereof and except the southerly 10 feet thereof, and extending indefinitely upward from an imaginary horizontal plane 16 feet above the elevation of the center line of said alley as now graded, be and the same is hereby vacated.''

After the passage of the ordinance, and before it took effect, respondents, as plaintiffs, brought this action to enjoin the appellant Washington Mutual Savings Bank from asserting title under the ordinance, or otherwise, to any part of the alley described in the ordinance, and to enjoin the city from enforcing the ordinance, or permitting any action thereunder by its co-defendant, and alleging, among other things:

''Plaintiffs are informed and believe that defendant, Washington Mutual Savings Bank has a binding contract to purchase said Lot 8 from the Peoples Savings Bank and will acquire the same and thereby become the owner of all of the vacated part of said alley, and that it will thereupon remove the building now standing on said Lot 8 and will erect thereon a substantial concrete or brick building, six stories or more in height, covering all of Lot 7 and extending over and across said alley and connecting with the building on Lot 7 so as to occupy the vacated portion of said alley from a horizontal plane sixteen feet above the center line of the alley upwards to a height of three stories or more, thus forming a bridge or viaduct over said alley, which will materially shut off the light and air from the westerly part of the building on plaintiffs' property, to their great and irreparable damage.

''The purpose of said Peoples Savings Bank and defendant Washington Mutual Savings Bank in obtaining the vacation of a part of said alley, was to acquire title to the part so vacated, or to an easement for the purpose of constructing and maintaining over the alley, the bridge or structure above referred to, and such will be the effect of said Ordinance No. 44833 if allowed to become effective; and defendant city will permit said ordinance to become effective and will permit defendant Washington Mutual Savings Bank to

so acquire the vacated portion of said alley and to construct and maintain its proposed building thereon, unless the operation of said ordinance and the proposed acts of defendants thereunder be enjoined by this court.''

To this complaint defendants demurred. Their demurrers were overruled, and they electing to stand thereon, judgment was rendered against them, perpetually enjoining them according to the prayer of the complaint, from which judgment both defendants have appealed.

Two questions are herein presented, and by stipulation of the parties we are asked to decide both. These questions are thus stated:

''1.  The right of a municipality of the first class to vacate a portion of an alley measured from a horizontal plane sixteen feet above the surface of the alley indefinitely upwards without vacating the surface of the alley.

''2.  The right of the owner of a neighboring lot, not immediately abutting or touching the space vacated, to enjoin the city from putting the vacating ordinance into operation, or the abutting owner from building across the vacated portion, as affecting the right to light and air.''

(1)  The power of a city to vacate streets and alleys is conferred by statute. Section 9297, Rem. Comp. Stat. [P. C. § 1277], specifies the procedure. Section 9298, Rem. Comp. Stat. [P. C. § 1278] empowers the city to entertain and hear petitions therefor, and ''such city or town shall be authorized and have authority by ordinance to vacate such street or alley or any part thereof.'' Section 7299, Rem. Comp. Stat. [P. C. § 3155], provides that the property within the affected limits shall belong to the abutting property owners, one-half to each, unless other proceedings are had to determine the title; and § 9300, Rem. Comp. Stat.

[P. C. § 1280], reads: "No vested rights shall be affected by the provisions of this act."

In *Ponischil v. Hoquiam Sash etc. Co.,* 41 Wash. 303, 83 Pac. 316, it was held that the legislature has power to vacate streets and may, and has by the statute referred to, delegated such power to the municipalities of the state; that the exercise of that power rests within the discretion of the municipal authorities, and being a political function, will be reviewed by the courts only upon a clear showing of collusion or fraud; and that one who has suffered only damages similar to those sustained by the general public may not be heard to complain. See, also, *Freeman v. Centralia,* 67 Wash. 142, 120 Pac. 886, Ann. Cas. 1913D 786, in which case several of these principles are reaffirmed. These decisions clear the ground somewhat and indicate why our present inquiry is limited to the exact points stated.

The statute, as we have seen, authorizes the vacation of a street or alley or any part thereof, without any limitation or specification as to the particular part, longitudinally, laterally, or in altitude or celsitude. The vacation of a half of a street in width was held unwarranted in *Brazell v. Seattle,* 55 Wash. 180, 104 Pac. 155, only because the petition did not ask for that result, and the power of the city council to so vacate in a proper proceeding was not there questioned. To the same effect is *Smith v. Centralia,* 55 Wash. 573, 104 Pac. 797. The right to vacate longitudinally is so obvious and is so commonly exercised without question that no discussion or citation of authority is necessary. If the municipal authorities, under the statute cited, may vacate a part in width, or a part in length, why may they not also vacate a part in altitude? According to the theory of the common law, the ownership of the surface of land embraces at least the control of

and the right to use and enjoy the space above it to an indefinite distance. *Pearson v. Matheson,* 102 S. C. 377, 86 S. E. 1063. In the case just cited, the right of the grantor to reserve the use of all space above a fourteen-foot line parallel to and above the soil, notwithstanding his granting of the fee otherwise, was upheld. Can we say that this well-recognized common law right was not within the contemplation of the legislature when it used the words "any part"? Clearly we can not, and if such authority be improper or unwise, it is for the legislature to limit or withdraw it.

(2) The answer to the second question is decided by determining whether or not respondents have any vested rights which will be affected, and whether or not they will suffer special physical damages different in kind, and not simply in degree, from those suffered by the general public. The purpose of petitioners to obtain advantages by the partial vacation of the alley is immaterial, since there is no charge of collusion or fraud. *Ponischil v. Hoquiam Sash etc. Co., supra.* If there is any special damage it must be in the shutting off of air and light from the property of respondents. It is to be observed that, as lots 7 and 8 are sixty feet in width, and the vacation affects only the middle forty feet, the property of respondents does not abut on the vacated portion of the alley. A space of ten feet exists between the vacated portion and the nearest edge of the property of respondents. The structure which may be built to occupy the vacated portion of the alley, commencing at a level of sixteen feet above the surface of the alley as now graded, manifestly leaves free ingress and egress to and from respondents' property, and undoubtedly leaves free circulation of air about the rear portion of their property.

In *Freeman v. Centralia, supra,* and in *Ponischil v. Hoquiam Sash etc. Co., supra,* we held, after reviewing

the authorities, that only the owners of lots abutting upon the portion of the street actually vacated can recover damages, unless some special damage is shown as distinguished from that sustained by the public in general. It was also held in the *Ponischil* and *Freeman* cases that, "recovery may be had if the vacation interferes with *access* to the abutter's property in such manner that he is specially or peculiarly damaged. The injury must be physical in character." See, also, cases cited in *Freeman v. Centralia, supra.*

Here, access to the property of respondents is not cut off or interfered with. There is the same access through the sixteen-foot passageway as there has always been. There is practically the same circulation of air. The cutting off of light is immaterial, since the owners of the property abutting, if the alley were wholly vacated, could build buildings up to the line of respondents' property, entirely shutting off light and air, and they would have no recovery. *Crofford v. Atlantic, B. & A. R. Co.*, 158 Ala. 288, 48 South. 366; *Brown v. Rea*, 150 Cal. 171, 88 Pac. 713; *Cummings Realty & Inv. Co. v. Deere & Co.*, 208 Mo. 66, 106 S. W. 496; *Hindley v. Manhattan R. Co.*, 185 N. Y. 335, 78 N. E. 276; *Kinnear Mfg. Co. v. Beatty*, 65 Ohio St. 264, 62 N. E. 341, 87 Am. St. 600.

Under the above authorities, we conclude that the correct rule is that only those directly abutting on the portion of the street or alley vacated, or alleged to be obstructed, or those whose rights of access are substantially affected, have such a special interest as to enable them to maintain an action. The further rule, deducible from our own cases and the authorities generally, is that owners of property abutting on a street or alley have no vested right in such street or alley except to the extent that their access may not be un-

reasonably restricted or substantially affected. Owners who do not abut, such as respondents here, and whose access is not destroyed or substantially affected, have no vested rights which are substantially affected. The statute exempting vested rights, of course, is only declaratory of the common law and constitutional rights, for the direction of municipal authorities. Such rights would be judicially protected in any event.

Our opinion upon the second ground is, therefore, that the owner of a neighboring lot, not immediately abutting or touching the space vacated, whose egress is not destroyed or substantially affected, and no special circumstances affecting him are shown, as distinguished from the general public, has no right to enjoin the city from putting the vacating ordinance into operation, or the abutting owner from building across the vacated portion of the alley, upon the mere right to light and air unobstructed by the vacated portion.

The decree appealed from is therefore reversed and remanded with instructions to dismiss the action.

MAIN, C. J., BRIDGES, MACKINTOSH, and PEMBERTON, JJ., concur.

TOLMAN, J. (dissenting)—I cannot concur in that part of the majority opinion which purports to answer the second question. Upon this point we must first determine whether the complaint shows that the respondent will suffer special physical damages different in kind from those suffered by the general public. The purpose of petitioners to obtain advantages is immaterial, since there is no allegation of collusion or fraud; *Ponischil v. Hoquiam Sash etc. Co.*, 41 Wash. 303, 83 Pac. 316, and if special damages there be, it must be found in the allegation charging a material shutting off of light and air from respondents' prop-

erty. In this connection it must be borne in mind that lots 7 and 8 are sixty feet in width; that the vacation affects only the middle forty feet, and that respondents' property does not abut on the vacated portion of the alley. True, we have said in *Freeman v. Centralia,* 67 Wash. 142, 120 Pac. 886, Ann. Cas. 1913D 786, that the property of the there complaining parties did not abut or touch upon the part of the street actually vacated, but that was not the controlling factor in the case. Indeed, the court said:

"Authority upon the particular proposition advanced is divided; but this court has, in several cases, aligned itself with the great majority of American courts in holding that a property owner does not come within the rule of compensation unless his property abuts upon or touches that part of the street which is actually vacated, or a special or peculiar damage is made to appear; or, to state the proposition in its elementary form, unless his injury differs in kind rather than in degree from that suffered by the general public. 15 Cyc. 665."

Clearly then, it was there recognized that rights may exist in owners of other than abutting property if there be special or peculiar damages. The courts of the state of New York seem to have gone as far as any in the direction the majority is taking, and in *Hindley v. Manhattan R. Co.,* 185 N. Y. 335, 78 N. E. 276, it was said:

"Such easements are not co-terminous with the street, but, in the absence of special circumstances, of which there was no proof in the case before us, are confined to that portion of the street which is directly in front of the property affected."

Plainly this does not support the position of the majority, nor is it in anywise contrary to the rule laid down in *Freeman v. Centralia, supra.* The other cases cited by the majority from other states are wholly

beside the point, so much so that an analysis of them is unnecessary. They furnish no authority whatever for the position taken by the majority. Industry of eminent counsel has not resulted in bringing to our attention any case which goes so far as to hold as does the majority opinion, that, "the correct rule is that only those directly' abutting on the portion of the street or alley vacated, or alleged to be obstructed, or those whose rights of access are substantially affected, have such a special interest as to enable them to maintain an action," and I have grave fears that the announcement of such a rule is so great a departure from the precedents of the past as will prove to be revolutionary in its nature, and result in the destruction of what have heretofore been regarded as thoroughly well vested rights.

In my judgment, the allegations of the complaint to the effect that the proposed occupation of the vacated portion of the alley will shut off light and air, supported by the further allegations as to the proposed improvements which obviously sustain the conclusion, show a special physical damage to respondents differing in kind from that suffered by the general public. The statute expressly exempts vested rights, and, in the absence of any statute, no vested right could be so taken or destroyed. There seems no doubt that generally in this country the right of adjacent property to enjoy light and air from a public street or alley is a vested right. *Field v. Barling*, 149 Ill. 556, 37 N. E. 850, 41 Am. St. 311-n; *Kellogg v. Cincinnati Traction Co.*, 80 Ohio St. 331, 88 N. E. 882, 17 A. & E. Ann. Cas. 242, and note following.

Respondents having a vested right are not only protected by the statute, but by the common law, and that right cannot be cut off or adversely affected by the

vacation proceedings. Hence, so long as the right exists, equity will enjoin interference therewith.

The judgment appealed from should, therefore, be affirmed.

PARKER, FULLERTON, and MITCHELL, JJ., concur with TOLMAN, J.