[No. 34775.   *En Banc.*   July 2, 1959.]

BERNARD P. STEELE *et al., Respondents and Cross-appellants,*
v. QUEEN CITY BROADCASTING COMPANY, *Appellant.*[1]

[1]Reported in 341 P. (2d) 499.

*Karr, Tuttle & Campbell,* for appellant.

*Heckendorn & McNair,* for respondents and cross-appellants.

ROSELLINI, J.—The plaintiffs in this action are property owners whose homes are located adjacent to property of the defendant on Queen Anne Hill, in Seattle, on which property the defendant has erected a television transmission tower. The action, in which the plaintiffs sought to enjoin the erection of the tower, was brought shortly after its construction was begun. A temporary restraining order was refused by the court. Trial of the cause to the court resulted in findings that the tower was constructed without a valid permit and constituted a nuisance but that the equities of the case dictated that no injunction should issue. Damages, which were asked in the alternative, were awarded to the plaintiffs in amounts totaling $13,000. The defendant appealed, and the plaintiffs have cross-appealed.

■ While error is assigned by the defendant to a number of the findings, none of these findings, nor any portion thereof, is set out in the defendant's brief, as required by Rules on Appeal 42 (1) (f) and 43, RCW Vol. 0. Consequently, insofar as the defendant's appeal is concerned, they are the established facts of the case.

According to these findings, the defendant, in 1951, applied for a conditional use permit to construct a tower at 1530 Queen Anne avenue. This application was submitted to the board of public works, which authorized the building department to grant the application. Notice of the authorization was sent to the defendant with instructions to present the notice to the building department "AT ONCE" to complete details and procure the permit. Failure to comply, the notice stated, would result in revocation.

At the time the defendant applied for permission to build the television tower, it did not know whether a tower

would be built, inasmuch as permission from the Federal Communications Commission to operate a television station was a prerequisite and had not been obtained. The defendant did not proceed at once to present the notice, but applied for a one-year extension.

This was granted by the superintendent of buildings. After this extension period had expired, the defendant again applied for an extension, which was granted by the superintendent "with approval of the Planning Commission." On January 19, 1954, the "Executive Board" granted an extension until October 1, 1954; and in subsequent years, upon application of the defendant, the planning commission gave yearly extensions, the last one purporting to expire on October 1, 1957. Applications for two of these extensions were made a considerable time after the expiration date stated on the previous extension notice. On August 28, 1957, the defendant applied for a building permit, submitted plans, and paid the fee required; and a building permit was issued on the assumption that the conditional use permit had been validly extended. The plans called for construction on an area which was smaller than the minimum area authorized by any law. The plaintiffs learned of the building permit immediately after its issuance.

Officers and agents of the city led the defendant to believe that they had the power to keep the conditional use permit alive by granting these extensions.

In February, 1957, the plaintiffs received oral notice that the defendant claimed that a permit given in 1951 was still in effect. However, agents of the defendant stated that the permit would not be used unless the FCC ruled in its favor. The plaintiffs could have started their action earlier than they did, but they, too, waited for a tentative ruling by the commission.

The plaintiffs' action was commenced on October 31, 1957. When the trial date arrived, the tower was nearing completion. The tower when completed was approximately 600 feet in height, with a base area of over 1100 square feet.

It is located about 30 feet from the lot line of the plaintiffs Millikin and within 67 feet of another adjacent lot line.

Under the ordinance in effect in 1951 (No. 45382), a structure such as the television tower in question could be authorized, after notice and a hearing before the board of public works. Under § 16 of that ordinance, the board had no power to authorize the construction of a tower nearer than 75 feet to an adjoining lot line if its base area was more than 900 square feet.

On June 24, 1957, ordinance No. 86300 was passed. This ordinance, which became effective thirty days later, provided a comprehensive zoning plan and required all buildings constructed after its effective date to be in compliance with its provisions.

Under its terms, the erection of a structure such as the television tower involved in this action was unlawful without the express authorization of the city council. Section 25.3 of the new ordinance provided that persons desiring to build under the prior ordinance should serve upon the building superintendent notice of such intention and proof that plans had been commenced. To be effective, this notice must have been served prior to the effective date of the new ordinance. No notice of this kind was served by the defendant; and in fact, the defendant could not have made such an application honestly within the time required by the ordinance, because the FCC ruling had not been received.

No ordinance creating a "Planning Commission" and empowering it to extend the life of a conditional use permit was pleaded in this case. Under § 14 of the Seattle city charter, the duties of the planning commission are of an advisory nature.

According to the findings, the evidence showed that there were two similar television towers in the neighborhood. These towers had existed for a number of years and had caused such damage to the surrounding property that, except in the case of the property immediately adjoining, such as that of the plaintiffs, little additional damage was caused by the third tower.

The court found that greater damage would be done the defendant by requiring it to remove the tower than would be done the plaintiffs by denying such relief, although the property of the plaintiffs was substantially damaged in the following particulars: Mortgage money is no longer obtainable in a reasonable amount; the presence of the tower engenders fears, whether justified or not, that the tower will fall and that it may be struck by an airplane, causing injury to the homes and injury or death to the people immediately concerned; sizable chunks of ice blow from the other towers onto adjacent properties in icy weather and will likewise fall from this tower, and there is a disagreeable wind noise within 300 feet of the towers.

Upon these findings, the court concluded that the authority received by the defendant from the board of public works was temporary in nature and had lapsed prior to renewal on at least two occasions; that the board had no power to grant extensions and thereby substantially change its ruling without further notice to interested parties; that the "Planning Commission" was without power to resurrect the defendant's lapsed permit; that the base area of the defendant's tower, which was greater than 900 feet and was located nearer than 75 feet to an adjoining lot line, was illegal under the 1951 ordinance and under the ordinance in effect at the time the permit was issued; and that, not being authorized by law, the tower constituted a continuing nuisance to the plaintiffs. This nuisance, the court concluded, could be adequately compensated for by damages.

The plaintiffs Steele and Millikin were awarded damages in the sum of $3,000 each, and the plaintiffs Ahlquist and Taylor were awarded damages of $3,500 each.

■ On the defendant's appeal, the sole question is whether the findings support the conclusions and judgment. The conclusion that the tower is unlawful is amply supported by the finding that the plans called for construction of the tower on an area which was smaller than the minimum area authorized by any law. This being the case, the building superintendent was without authority to issue the

permit. It is also clear from the findings that the defendant did not comply with ordinance No. 86300, which had been in effect more than thirty days when the defendant applied for the building permit. The defendant could have proceeded under the old law only by complying with the provisions of the new ordinance relative to the serving of notice upon the building superintendent and submitting proof that plans had been started, which it failed to do.

Since the conclusion that the tower was unlawfully constructed is supported by other findings, we need not consider whether, as the defendant seems to contend, it should be presumed that the extensions of the conditional use permit were made with proper authority, and that the officials involved had complete discretion in the matter.

It is well established that a building permit issued in violation of law or under a mistake of fact confers no rights. *Nolan v. Blackwell*, 123 Wash. 504, 212 Pac. 1048, and authorities cited therein. The findings show that the tower, located as it is in close proximity to the plaintiffs' property, constitutes a nuisance causing special damage to the plaintiffs, for which recovery was properly allowed by the court. *Riblet v. Spokane-Portland Cement Co.*, 41 Wn. (2d) 249, 248 P. (2d) 380; *Bartel v. Ridgefield Lbr. Co.*, 131 Wash. 183, 229 Pac. 306, 37 A. L. R. 683.

Moreover, this court has held in *Jacobs v. Seattle*, 93 Wash. 171, 160 Pac. 299 (in accord with the general rule stated in 39 Am. Jur. 481, § 205) that even though an act may not be a nuisance, because done under legislative authority, it may nevertheless amount to a taking or damaging of private property for public use, for which compensation must be made. *A fortiori*, it would seem compensation should be decreed if the taking or damaging is for a private purpose.

The defendant assigns error to the conclusion (which is actually a finding of fact though incorrectly denominated a conclusion) that the plaintiffs were damaged in the amounts heretofore set forth. The gist of the defendant's argument on this point is that the proper measure of dam-

age was the depreciation in market value of the various properties, and that the only witnesses whose testimony it deems to be credible testified to amounts of depreciation not exceeding a total of $5,625. The plaintiffs, on their cross-appeal, also complain of the amount of damages, urging that they are inadequate, and pointing out that each of the plaintiffs had testified to a decrease in market value much greater than the amount of recovery allowed. We find no merit in either of these contentions. The trial judge observed the witnesses and it was his province to determine their credibility. The amount of damages awarded was within the range of the testimony presented concerning the reduction in market value of the property, and his finding in this regard will not be disturbed on appeal. *Grays Harbor County v. Bay City Lbr. Co.*, 47 Wn. (2d) 879, 289 P. (2d) 975.

As cross-appellants, the plaintiffs urge that injunctive relief should have been granted and have made twenty-seven assignments of error, many of them pertaining to the failure of the court to enter proposed findings of fact embodying details of the evidence. The ultimate findings of the court favor the plaintiffs' position that no valid building permit was ever issued to the defendant, and any error in omitting more detailed findings resulted in no prejudice to the plaintiffs.

Error is assigned to the finding that the defendant was led to believe by acts of the city officials that they had power to keep the conditional use permit in effect by granting extensions, and to the conclusion based thereon that the defendant acted mistakenly but in good faith in placing such reliance on these acts.

It is the position of the plaintiffs that this reliance was unjustified, and that no equity exists in behalf of the defendant in this regard. There is much to be said for this contention. It was evident to the defendant, long before the building permit was issued, that the construction of the tower was bitterly opposed by the residents in the area and that they maintained that it could not be legally authorized.

It was also aware that no hearing had ever been held after they were given actual notice of the defendant's intention to construct the tower, although notice of its application for a permit to "establish and maintain a television and radio station" at 1530 Queen Anne avenue had been posted a number of years before, in 1951.

The defendant also must have been aware of the terms of the ordinance enacted in 1957, which made structures of this kind unlawful unless particularly allowed by action of the city council. Furthermore, the defendant was notified at the time of its last application for an extension that the permit had expired and a new application would have to be made. For some reason, the extension was granted without such application.

These considerations give rise to grave doubts regarding the good faith of the defendant in pursuing the course which it followed. However, on the other side of the coin is the fact that, while the plaintiffs and other members of the community were vigorous in their protests, they took no legal action against the defendant until its permit had been secured and work on the tower had begun. Under the circumstances such as those which confronted the plaintiffs when construction of the tower was imminent but had not commenced, RCW chapter 7.24 authorizes the institution of a declaratory judgment action to have the rights and status of the parties determined. In balancing the equities between the parties, the court was entitled to consider the fact that the plaintiffs did not follow this procedure, but allowed the defendant to proceed with its plans, initiate construction, and to expend in the process a large sum of money, before they instituted suit.

Another significant fact was that two towers had been constructed previously within a few blocks of the proposed site, apparently without protest and apparently with proper authority.

It is not inconceivable that officers of the defendant felt, in view of the cooperation given them by the city officials, that these officials were vested with some discretion in the matter and could relax the requirements of the ordinances

for the sake of expediency. At any rate, the trial court so found and, since there is substantial evidence to support this finding, a reversal of it would amount to a usurpation of the trial court's function.

■ The plaintiffs also urge that the defendant exhibited bad faith in hurrying to construct the tower while the trial was pending. However, a temporary restraining order was denied. The defendant could assume, on the basis of this denial, that it had a right to proceed without prejudicing its defense. The defendant was required to proceed with construction without delay if it was to complete the tower within the time specified in its permit from the FCC.

■ Whether or not an injunction will issue must be determined by balancing the equities of the parties. No one factor is controlling. In Restatement, Torts, 693, § 936, it is stated:

"The appropriateness of injunction against tort depends upon a comparative appraisal of all of the factors in the case, including the following primary factors:
"(a) the character of the interest to be protected,
"(b) the relative adequacy to the plaintiff of injunction and of the remedies [available] . . . ,
"(c) plaintiff's delay in bringing suit,
"(d) plaintiff's misconduct,
"(e) the relative hardship likely to result to defendant if injunction is granted and to plaintiff if it is denied,
"(f) the interests of third persons and of the public, and
"(g) the practicability of framing and enforcing the order or judgment."

While the plaintiffs could have taken legal action before the building permit was issued, the court found that they were not guilty of laches and there was no question that they were guilty of any misconduct. The interests of both parties were property interests, but the hardship to the defendant, the court found, would be much greater if it were required to remove the tower than would be the hardship to the plaintiff if injunctive relief were denied. The court also found that damages would adequately compensate the plaintiffs. This finding was justified by their evidence, since they were mainly concerned with the loss in value of their

properties. While the homes in which they lived had many qualities which they found desirable, they did not contend that these qualities could not be found elsewhere for a comparable price.

Particularly, the court considered the fact that the presence of two other towers, only a few blocks away, had already blighted the neighborhood, and the additional tower added little to the damage already done except as it affected those, such as the plaintiffs, living in close proximity. Consequently, it would be unfair to require the defendant to remove its tower, occasioning it great financial loss and probable loss of its right to broadcast over the channel, when the removal of the tower would not restore the value of any of the surrounding properties other than those immediately adjacent.

The interest of the public in the functioning of this television station was not mentioned by the court; but it would seem that if an equity exists in this regard, it exists in behalf of the defendant.

Undoubtedly, had the city authorities considered the fact that the location of these towers in an area zoned for private homes would result in great annoyance to many residents and depreciation in property values, their construction in such close proximity to residence properties would not have been authorized. Fortunately, the evidence shows, the city council has belatedly awakened to the problem and has adopted an ordinance prescribing procedures that should minimize the possibility of the recurrence of such a situation.

■ Insofar as the plaintiffs are concerned, the trial court was faced with a difficult problem in affording them a remedy and at the same time not inflicting a severe hardship on the defendant. The disposition which the court made of this problem, in the exercise of its sound discretion, is justified by the evidence and in accord with the law.

■ We find no merit in an assertion made by the plaintiffs on their cross-appeal that the court erred in denying their motion, introduced during the trial, to join the Queen

Anne community club as party plaintiff. Plaintiffs cite no authority and we are aware of none to the effect that an organization such as this was a necessary party to the action. The granting or denying of a motion of this kind is within the discretion of the trial court, and there is nothing in the record to indicate that that discretion was abused in this instance.

The judgment is affirmed.

ALL CONCUR.

