[No. 41862. En Banc. September 23, 1971.]

WANDERMERE CORPORATION, *Petitioner*, v. THE STATE OF WASHINGTON, *Respondent*.

Winston, Repsold & McNichols, by Stanley D. Moore, for petitioner.

Slade Gorton, Attorney General, and Charles F. Secrest, Assistant, for respondent.

FINLEY, J.—This is an action by petitioner Wandermere against the State Department of Highways to restrain and enjoin the department from making certain improvements to an existing drainage facility until such time as petitioner's damages have been ascertained "in the manner provided by law."

In January, 1970, the Department of Highways published notice of intent to hold a design hearing regarding proposed construction of a storm drainage facility. The project consisted of improvements to existing drainage facilities adjacent, inter alia, to U.S. 395, a primary state highway in Spokane County. The facility is designed to capture run-off waters from U.S. 395 and water from catch basins in the area, in addition to receiving waters from a connecting storm sewer system. These waters are then transported through the improved facility and are discharged into the Little Spokane River.

The department's notice described the proposed drainage facility as consisting of a *completely underground sewer line* to be constructed *entirely within the boundaries* of existing state-owned highway right-of-way limits. Petitioner Wandermere's property abuts the highway, U.S. 395, for a distance of approximately 1 mile. The described project design was approved and a contract was awarded in

early August, 1970. Construction of the project—which is of some magnitude—commenced several miles south and east of petitioner's property. Work progressed without incident and according to plans for some 2½ months. In late October, 1970—when project construction had reached a point some 1,100 to 1,200 feet south of the Wandermere property —petitioner observed that, although a ditch had been excavated, no pipe was, in fact, being laid.

Petitioner immediately confronted representatives of the Department of Highways and was thereupon informed that, due to a change in plans, the facility would *not* consist of an *underground sewer line* in the immediate proximity of petitioner Wandermere's property. Rather, the facility, as it abutted petitioner's land, was to consist of an open drainage ditch, varying in width from 20 to 48 feet and in depth from 5 to 8 feet.

At this point, "the race was on," in a manner of speaking, with petitioner attempting to move the cogs of re-straining-injunctive legal machinery faster than respondent could move its bulldozers and other equipment. Petitioner sought immediate judicial relief by requesting an injunction to restrain respondent Department of Highways' work on the project until such time as petitioner Wandermere's damages had been determined "in the manner provided by law." Up to the date set for the trial court's hearing on petitioner's complaint, no construction on the contemplated, revised highway project had occurred in the immediate proximity of petitioner's property, with the exception of some preliminary clearing.

The trial court was convinced that the completed drainage ditch would result in some damage to petitioner's right of access to the highway. However, the trial court concluded that a balancing of the equities and the availability of legal remedies to petitioner, potentially in the form of an action for inverse condemnation, justified denial of the injunction. The court's denial was conditioned upon:

1. The State of Washington submit[ting] to the jurisdiction of [the Spokane County Superior] court and in

the alternative, appear[ing] and defend[ing] in the present action for damages or fil[ing] a condemnation action for the Wandermere property within 30 days, and

2. That the provisions of RCW Section 8.25.070 regarding attorneys' and expert witness fees apply to said damage action.

Petitioner first attempted to appeal the trial court's ruling by filing a petition for writ of review in the Court of Appeals. After initially determining that it lacked jurisdiction in the matter, the Court of Appeals, on reconsideration, certified the cause to this court. We approved this sound procedure followed by the appellate court and issued a writ of certiorari to the trial court on February 11, 1971. We additionally ordered that further proceedings in the trial court be stayed pending our review of the matter. In the interim period, respondent Department of Highways continued construction of the drainage facility adjacent to petitioner Wandermere's property to the extent that the facility, at that point, is now completed and, apparently, fully operational.

Petitioner's initial contention upon the review here is that the actions of respondent Department of Highways amount to a constitutional taking of petitioner's access rights within the meaning of Const. art. 1, § 16 (amendment 9). Thus, in this regard, it is petitioner's contention that the Department of Highways is constitutionally required (1) to seek an order adjudicating public use and necessity, *and* (2) to pay ascertained damages *before* it can legally undertake construction of the questioned drainage facility.

Const. art. 1, § 16 (amendment 9) provides, in relevant part:

*No private property shall be taken or damaged for public or private use without just compensation having been first made or paid into court for the owner,* and no right-of-way shall be appropriated to the use of any corporation other than municipal until full compensation therefor be first made in money, or ascertained and paid into court for the owner, . . . *Whenever an attempt is made to take private property for a use alleged to be*

*public, the question whether the contemplated use be really public shall be a judicial question, and determined as such,* without regard to any legislative assertion that the use is public:    . . .

(Italics ours.)

The conceptual distinction between "taking" and "damaging" is far from clear-cut. Earlier decisions of this court generally distinguish the two concepts in the following manner:

> [O]ther constitutions, including our own, . . . include both terms, "taken" and "damaged." Where both terms are included, the word "damaged" should be held to cover injuries to property where there is no direct taking of the land itself; that is, where the owner is not deprived of title to any of the land, but where the land has been so injured or damaged as to cause a direct loss to the owner.

*Milwaukee Terminal Ry. v. Seattle,* 86 Wash. 102, 107, 149 P. 644 (1915). *See also, Fenton v. Seattle,* 132 Wash. 194, 231 P. 795 (1925); *Compton v. Seattle,* 38 Wash. 514, 80 P. 757 (1905); *Swope v. Seattle,* 36 Wash. 113, 78 P. 607 (1904).

The above distinction has, however, been subjected to increasing challenge and judicial analysis on the basis that government is responsible for interference with the right, use, and enjoyment of private property whether such interference is to be characterized as a "taking" or as a "damaging." In *Ackerman v. Port of Seattle,* 55 Wn.2d 400, 409, 348 P.2d 664, 77 A.L.R.2d 1344 (1960), this court quoted with approval *Spann v. Dallas,* 111 Tex. 350, 355, 235 S.W. 513, 19 A.L.R. 1387 (1921):

> *Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment and disposal. Anything which destroys any of these elements of property, to that extent destroys the property itself.* The substantial value of property lies in its use. If the right of use be denied, the value of the property is annihilated and ownership is rendered a barren right.

(Italics ours.) *See also, Martin v. Port of Seattle,* 64 Wn.2d

309, 391 P.2d 540 (1964); *Cummins v. King County,* 72 Wn.2d 624, 434 P.2d 588 (1967).

More recent decisions of this court clearly indicate that the earlier conceptual distinction between "taking" and "damaging" based upon the traditional definition of "direct" as opposed to "no direct" physical invasion is no longer viable. Hence, such an approach is unacceptable in terms of both traditional and socially desirable judicial responsibility and authority in that area of the law commonly designated as *"constitutional interpretation."* This view has been recognized by the United States Supreme Court. In *United States v. Cress,* 243 U.S. 316, 61 L. Ed. 746, 37 S. Ct. 380 (1917), the court stated: "[I]t is the character of the invasion, not the amount of damage resulting from it, so long as the damage is substantial, that determines the question whether it is a taking." *See also, United States v. Causby,* 328 U.S. 256, 90 L. Ed. 1206, 66 S. Ct. 1062 (1946).

■ It is thus apparent that the distinction between the two concepts—"taking" and "damaging"—must be determined by the "quality" or "character" of the governmental interference. Where such interference is mere happenstance, fortuitous or of inconsequential dimension, that interference may properly be classified as a "damaging." Where, however, the character of the governmental interference with private property rights is planned, deliberate and *substantial,* such interference, upon proper factual showing, should be deemed a "taking"—thereby requiring prior adjudication of public use and necessity under Const. art. 1, § 16 (amendment 9).

The characterization of these concepts developed and applied in *Ackerman, Martin,* and *Cummins* arose in the context of actions for "inverse condemnation." Thus, in these cases, the question of public use and necessity was not *at the outset* presented for judicial determination. Rather, that question was determined after the fact of governmental fiat and action—*i.e.,* positive governmental interference with private property rights *absent any prior judicial determination*—and the only remaining issue in the above-

mentioned cases involved an after-the-fact allowance and determination of appropriate compensation to the private property owner.

In the instant case, respondent department's alleged interference with petitioner Wandermere's property rights *had not transpired*—except for certain inconsequential preliminary work—prior to petitioner's attempt to secure an injunction. Thus, we are faced with the unique question, whether drainage facility improvements, to be constructed entirely upon state-owned primary state highway right-of-way amount to a governmental interference with access rights of adjacent private property *to the extent that such interference amounts to a constitutional "taking" requiring prior adjudication of public use and necessity.*

After considerable deliberation, we are unable to conclude upon the facts of the instant case that the actions of respondent Department of Highways amount to a "taking" of petitioner Wandermere's property rights within the meaning of Const. art. 1, § 16 (amendment 9). In the instant case, it must be noted that the drainage facility will not eliminate any present physical access of petitioner Wandermere to the state highway, U.S. 395, nor will the project deprive the petitioner of any of its legal rights to construct access to said highway or make the construction of such access impossible. At most, the facility will render construction of highway access by petitioner more costly, and, collaterally, will increase the state's liability and the expenditure of public funds for damages.

Thus, we conclude that the "character" of respondent Department of Highways' interference with petitioner's property rights does not amount to a "taking," and respondent was not, in an absolute constitutional context, required to seek an order adjudicating public use and necessity prior to construction of the drainage facility improvement.

■ ■ Our conclusion above is not intended to imply that the Department of Highways was precluded from seeking such a prior adjudication of public use and neces-

sity. Nor do we mean to imply that such action by the respondent would not have been a more prudent course of action. To the contrary, it may be noted that the Department of Highways possesses clear statutory authority to seek orders adjudicating public use and necessity in connection with projects of the instant kind. RCW 47.12.010 provides, in relevant part:

> *Whenever it is necessary to secure any lands or interests in land* for a right of way for any state highway, or *for the drainage thereof* or construction of a protection therefor . . . *the highway commission is authorized to acquire such lands or interests in land* in behalf of the state *by gift, purchase or condemnation. In case of condemnation to secure such lands or interests in land, the action shall be brought* in the name of the state of Washington *in the manner provided for the acquiring of property for the public uses of the state,* . . .

(Italics ours.)

The determination of whether a given governmental interference with private property rights constitutes a "taking" or a "damaging" is a complex determination depending upon the unique facts of each given case. *This determination is a judicial question.* Thus, where private property owners advance good faith contentions that the state's actions will amount to a "taking," it is most highly desirable that the Department of Highways avail itself of the authority and the procedure delineated in RCW 47.12.010. Prior adjudication of the question would avoid the possibility that the state may incorrectly assess the "character" of its interference as amounting to a "damaging" rather than a "taking." Such incorrect determinations regarding the nature of the interference—made or assumed by the highway department "sua sponte"—may both result in depriving the property owner of his full constitutional protections and in subjecting the state to a subsequent and considerably more costly finding that its actions—rather than mere "damaging"—constitute a "taking for public use."

Indeed, the instant case demonstrates the wisdom of prior adjudication of the question of public use and neces-

sity. Petitioner Wandermere, in addition to alleging injury to its highway access rights, further contends that the revised project—consisting of an *open drainage ditch*—will seriously harm valuable interests and rights in an existing underground water table beneath its property. It is not inconceivable that proper showing could have been made at trial that the "character" of the state's interference with such rights in the instant case amounted to a "taking" of those rights.

Having determined that petitioner Wandermere is not entitled to an adjudication of public use and necessity regarding respondent department's interference with petitioner's highway access rights, we now consider whether petitioner was entitled to an injunction pending determination (1) of its alleged damages to highway access, or (2) of the "character" of respondent department's interference with its interests and rights in the underground water table.

In this regard, petitioner argues that *Brown v. Seattle,* 5 Wash. 35, 31 P. 313, 32 P. 214 (1892), is determinative. *Brown* involved damages to private property abutting a city street as the result of a change in street grade. Therein, this court held that, under Const. art. 1, § 16, the property owner

> had a right to have [the] damage ascertained by a jury and paid to her before the work was done, if the damage thus sustained would leave her property less valuable to sell or rent than it was before; . . .

(Italics ours.) *Brown v. Seattle,* 5 Wash. at 43. Respondent Department of Highways argues that *Brown* is distinguishable on the ground that the governmental acts involved therein had not transpired prior to petitioner Brown's securance of an injunction.

We find no merit in the distinction suggested by the respondent. It is true that some work had been performed on the project in the immediate vicinity of petitioner Wandermere's land as of the date set for the trial court's hearing on petitioner's complaint. However, it is clear from the

record that petitioner Wandermere first contacted the department regarding its (Wandermere's) objection to the plan change *prior to any construction adjacent to petitioner's land.*

Furthermore, it is obvious that the work in the immediate vicinity of petitioner's land—which consisted of some mere clearing—was insufficient to defeat petitioner Wandermere's right to an injunction (assuming petitioner was otherwise entitled to such relief), upon the ground that once the state wrongfully "takes" private land it will not be ousted, and the property owner will be left to his legal remedies. *See State ex rel. Peel v. Clausen,* 94 Wash. 166, 162 P. 1 (1917). Indeed, were we to hold otherwise—*i.e.,* that respondent's minor preliminary work defeated petitioner's right to an injunction—we would, as petitioner suggests, be sanctioning a "fleet of foot" doctrine; *i.e.,* "notwithstanding the constitutional mandate that damages be determined and paid prior to the damaging, if the state can build faster than the property owner can litigate, then the question becomes moot."

The constitutional provision (Const. art. 1, § 16 (amendment 9)) is clear, unambiguous and apparent as to its intended meaning:

> *No private property shall be taken or damaged for public* or private *use without just compensation having been first made,* or paid into court for the owner, . . .

(Italics ours.) It cannot be seriously disputed that petitioner Wandermere made a showing of damage. Respondent Department of Highways concedes—and it is obvious on the face of the record—that the completed ditch will make any construction of access by petitioner more costly. Additionally, petitioner Wandermere alleged, and was entitled to the opportunity to prove, that the open ditch would seriously damage or constitute a taking of valuable interests and rights in an existing underground water table.

In short, we conclude that petitioner Wandermere was entitled to an injunction prohibiting the Department of Highways from further construction of the drainage facility

until such time as petitioner's damages had been ascertained and paid, and the "character" of respondent department's interference with petitioner's interests in the underground water table had been established. The injunction could, and we think should, have been granted by the trial court in the instant case.

Nevertheless, any victory in this regard by petitioner at the present stage of the proceedings may be rendered a somewhat "Pyrrhic" one, for it would indeed be a futile and useless gesture for this court now to prohibit and enjoin an activity which is completed. While it is true that this court will, by mandate, compel the undoing of acts which have been illegally done (*Farnsworth v. Wilbur*, 49 Wash. 416, 95 P. 642, 19 A.L.R. 320 (1908)), respondent's actions in completing the project during the pendency of this litigation were not illegal in an ultimate and compelling constitutional sense. We have previously held that, upon denial of a temporary restraining order, the defending party may assume that it has the right to proceed with the construction sought to be enjoined. *Steele v. Queen City Broadcasting Co.*, 54 Wn.2d 402, 341 P.2d 499 (1959). Additionally, in the instant case, petitioner's alleged damages may be fully determined and adjudicated upon remand.

For the reasons indicated, the case should be remanded for determination of petitioner's damages. It is so ordered.

HAMILTON, C.J., ROSELLINI, HUNTER, HALE, SHARP, and WRIGHT, JJ., and RYAN, J. Pro Tem., concur.

NEILL, J., concurs in the result.

Petition for rehearing denied November 11, 1971.