[No. 46157. En Banc. May 29, 1980.]

GOLDIE NANNETTE LONDON, *Appellant,* v. THE CITY OF SEATTLE, ET AL, *Respondents.*

*Roger M. Leed* and *Michael Gendler*, for appellant.

*Robert J. Walerius, Pamela A. Okano,* and *Moriarty, Mikkelborg, Broz, Wells & Fryer,* for respondents.

Hicks, J.—This case concerns the vacation of portions of certain streets in Seattle to permit Providence Medical Center (PMC) to build needed new medical facilities. In October 1977, the Seattle City Council enacted two ordinances: No. 106839 provided for a planned unit development by PMC and No. 106866 provided for the vacation of 1 block of East James Street between 16th and 17th Avenues and a portion of 17th Avenue. Plaintiff/appellant London brought an action in King County Superior Court challenging the validity of these ordinances. The trial court granted PMC a partial summary judgment declaring the

ordinances valid and refusing injunctive relief. We affirm the trial court.

London is the owner of a 60–foot by 128–foot parcel fronting on 17th Avenue, surrounded on all sides by land owned by PMC. London's tract is the only property in the block not owned by PMC.

When London acquired her property in 1960, 17th Avenue was a through street running north and south. East Cherry Street, a block north, and East Jefferson, a block south, were through streets running east and west. In 1963, upon application of PMC, the City of Seattle vacated a portion of 17th Avenue lying between London's property and East Cherry Street. The vacation was conditioned upon PMC dedicating certain land for street purposes, extending East James Street between 16th and 17th Avenues. London's interior lot on 17th Avenue became a corner lot bounded by 17th Avenue on the east and the newly created portion of East James on the north.

In 1977, PMC petitioned the City to vacate the East James right–of–way, as well as its intersection with 17th Avenue. As the owner of more than two–thirds of the abutting land, PMC petitioned under RCW 35.79.010. Several public hearings were conducted by various units of city government at which London and her counsel were active participants voicing her objections. As part of the review process an environmental impact statement was prepared.

The ordinances were signed by the mayor in October and became effective in late November 1977. The instant action was commenced December 9, after the effective date of the ordinance but before any construction activity. London sought: (1) temporary and permanent injunctive relief to prevent PMC from asserting title or dominion over any portion of land vacated under the ordinances; (2) a declaration that the ordinances are unconstitutional and void; (3) a declaration that she has a vested right of easement for access, air, light and view to the vacated portions of East James Street and 17th Avenue; (4) a declaration that she has title as an abutting owner to one–half the vacated

portion of East James Street; and (5) recovery of her legal fees and costs.

In its answer, PMC challenged London's standing to question the constitutionality of the ordinances and requested a declaration of validity and costs. PMC alleged that an oral contract of settlement with London was negotiated in August 1977, and subsequently repudiated by her. PMC counterclaimed for damages for breach of that contract.

Both parties moved for summary judgment. March 31, 1978, the trial court issued its memorandum opinion granting partial summary and declaratory judgment to PMC. The court found London had standing to challenge the ordinances. It went on to conclude that: (1) the ordinances were valid as there was no material issue of fact regarding the establishment of a "public use" for purposes of vacation; (2) title to the vacated portions of East James Street and 17th Avenue vested in PMC; and (3) injunctive relief was inappropriate as suit was commenced after the damaging (enactment of ordinances) occurred.

The formal order was entered May 4, 1978. The court reserved for trial the issues of London's damages for injury to easement rights and PMC's counterclaim for breach of contract. London lodged this appeal. PMC began construction. At the time of oral argument before this court, we were advised that the facility was substantially completed.

In her brief on appeal, London assigns error to those portions of the trial court's judgment declaring the ordinances valid and constitutional, vesting title to the vacated streets in PMC, and denying an injunction against the ordinances or the contemplated construction.

### STANDING

A landowner whose property does not abut on the street or portions thereof sought to be vacated or a nonabutting landowner who does not suffer special injury may not question a procedurally correct vacation or the purpose therefor. *Kemp v. Seattle,* 149 Wash. 197, 199, 270 P. 431

(1928); *Capitol Hill Methodist Church v. Seattle,* 52 Wn.2d 359, 368, 324 P.2d 1113 (1958). Property abuts on a street when there is no intervening land between it and the street. *Kemp,* at 201.

PMC asserts London lacks standing to challenge the validity of the ordinances because she is not an abutting owner on the vacated portion of 17th Avenue and has no abutting rights to East James Street. As enacted, the ordinance did not vacate the southerly 4 feet of 17th Avenue requested by the petition. Thus, 17th Avenue extends 4 feet north of London's property. The trial court concluded that:

> The fact that four feet of what was East James Street [*sic*] 17th Avenue] remains unvacated does not detract from the plaintiff's position that at the commencement of the vacation proceedings, [London] was an abutting property owner to the whole street.

We agree that London has standing. *See Fry v. O'Leary,* 141 Wash. 465, 252 P. 111, 49 A.L.R. 1249 (1927). The fact that a 4-foot strip of 17th Avenue immediately north of London's property was not vacated, assertedly for traffic control purposes, is not determinative of appellant's right to challenge the ordinances in question because she was a presumptive abutter to East James Street. *Cf. Howell v. King County,* 16 Wn.2d 557, 134 P.2d 80, 150 A.L.R. 640 (1943).

## PUBLIC PURPOSE

█ A city may vacate a public street and extinguish the public easement therein by following the procedures set forth in RCW 35.79. Vacation of a street, however, must be based on "some element of public use." *Young v. Nichols,* 152 Wash. 306, 308, 278 P. 159 (1929). Although London apparently does not question the procedural regularity surrounding enactment of the vacation ordinance, she does question the public purpose behind the vacation.

We believe the vacation ordinance was supported by "some element of public use" and not enacted solely for a

private purpose. *See Capitol Hill Methodist Church v. Seattle, supra.* The issuance by the Department of Social and Health Services of a "certificate of need" for the PMC project under RCW 70.38 designated the proposed facility as "essential to the health, safety and welfare of the people of the state." No affidavit or evidence to the contrary was presented to the trial court.

The legislative body is the proper entity to weigh public benefit. *Fry v. O'Leary, supra.* There is a presumption that the ordinance in question was validly enacted for a public purpose. *Hoskins v. Kirkland,* 7 Wn. App. 957, 503 P.2d 1117 (1972). In the absence of prima facie evidence to the contrary, the presumption of validity may support a summary judgment. *Bates v. Bowles White & Co.,* 56 Wn.2d 374, 378, 353 P.2d 663 (1960).

In its memorandum opinion, the trial court found that no material issue of fact existed regarding the establishment of a public use for the instant street vacation purposes. PMC submitted a number of affidavits supportive of public use with its motion for summary judgment. London filed no rebutting affidavits concerning the public use aspect, nor did she otherwise produce evidence on this issue. As there is no evidence that the vacation of the streets did not serve a public purpose, we affirm the trial court on this issue.

CONSTITUTIONALITY OF STREET VACATION

London bases her constitutional argument upon Const. art. 1, § 16 (amendment 9), which provides in part:

> No private property shall be taken or damaged for public or private use without just compensation having been first made, or paid into court for the owner, . . .

She contends the street vacation ordinance is void because it was enacted without first ascertaining and paying compensation for the taking or damaging of her property. PMC responds that London had no property taken or damaged and, in any event, she has already been compensated. Alternatively, PMC asserts that if there is any defect it lies

not in the taking but in the manner thereof, and is thereby an excusable defect.

Under the case law of this state, an abutter suffering damage peculiar to himself because of a street vacation is entitled to recover compensation. *See, e.g., Freeman v. Centralia,* 67 Wash. 142, 120 P. 886 (1912). Further, substantial interference with access may constitute a "taking or damaging" of property requiring compensation under our constitution. *See, e.g., State ex rel. Smith v. Superior Court,* 26 Wash. 278, 66 P. 385 (1901).

■ Article 1, section 16 has been consistently construed by this court as requiring that compensation be first paid. *See, e.g., State ex rel. Eastvold v. Yelle,* 46 Wn.2d 166, 279 P.2d 645 (1955), and cases cited therein. It is conceded that the City of Seattle did not, prior to enactment of the vacation ordinance, take steps to ascertain or pay for any damages London may have sustained because of the street vacation. She asserts that the city council lacked the power to vacate until it complied with the constitutional requirement. Absent such compliance, she contends that the ordinance vacating the street is void and injunctive relief is presently mandated. We disagree.

The state has plenary power over public streets and may vacate the public easement therein. The state may invest municipal corporations with this authority and it has done so by statute. *See, e.g.,* RCW 35.79 (street vacation statute); RCW 8.12 (delegating eminent domain powers to cities). The instant ordinance was clearly within the City's vacation power. At issue is whether failure to assess damages prior to passage voids the ordinance.

RCW 35.79, which authorizes the legislative authority of cities or towns to vacate streets, does not provide for ascertainment and payment of damages in advance of the vacation. *Compare* RCW 8.12. RCW 35.79 has existed in virtually the same form since 1901.[1] Although numerous

---

[1] RCW 35.79 was expanded somewhat in 1965 to authorize local governments to initiate street vacation proceedings. Laws of 1965, ch. 7, p. 373.

street vacations have been contested before this court in the 80 years since the statute's enactment, we have discovered no case where a vacating ordinance was declared void *solely* because of the failure to previously ascertain and pay damages.

The trial court upheld the constitutionality of the vacation ordinance and denied injunctive relief, relegating London to her remedy in damages. Under these circumstances, we agree.

All procedures required prior to enacting the ordinance were followed including public meetings by the city planning commission, the planning and urban development committee, and the transportation committee of the city council. An environmental impact statement was prepared.

Although London and her counsel were well aware of the imminence of the enactment of the street vacation ordinance, she took no judicial action to restrain it. Her protests to the Seattle City Council against the ordinance did not raise the issue of failure to ascertain and pay her damages as affecting the legality of the ordinance. After the council approved the vacation ordinance and the mayor signed it, a 30-day period had to elapse before it became effective. London did nothing. Finally, December 9, 1977, almost 2 weeks after the ordinances became effective, she brought an action asking that the ordinance be declared unconstitutional and void and that injunctive relief be ordered.

Any injury that the vacation might occasion to London was effected when the public right to continued use of the street was terminated—the date the ordinance became effective. *See Fry v. O'Leary,* 141 Wash. 465, 473-74, 252 P. 111, 49 A.L.R. 1249 (1927). Thus, the issue becomes the propriety of *post*-damaging injunctive relief. We have stated in another context that damaging without prior compensation is "not illegal in an ultimate and compelling constitutional sense." *Wandermere Corp. v. State,* 79 Wn.2d 688, 698, 488 P.2d 1088 (1971). Assuming, arguendo, that London's damages should have been ascertained

prior to enactment of the vacation ordinance, such a determination by this court at this time would appear to be at most a Pyrrhic victory for her. *See Wandermere Corp. v. State, supra* at 698.

Before a taking has been completed, injunction is an appropriate remedy to enforce the prepayment requirements of our constitution. But once the taking is complete, payment of just compensation is the only sufficient and suitable remedy. *Domrese v. Roslyn,* 89 Wash. 106, 154 P. 140 (1916); *Wandermere Corp. v. State, supra. See* Comment, *Balancing Private Loss Against Public Gain To Test for a Violation of Due Process or a Taking Without Just Compensation,* 54 Wash. L. Rev. 315, 326 (1979).

Under the circumstances of this case, injunctive relief to London would not appear to be equitable. *See Steele v. Queen City Broadcasting Co.,* 54 Wn.2d 402, 341 P.2d 499 (1959). The court has considerable discretion in granting or withholding equitable relief. *Goetz v. Russell,* 132 Wash. 339, 232 P. 300 (1925). The record indicates a cost to PMC exceeding $100,000 for each month of delay in construction. It appears that the amount of London's damages, if any, was not affected by prior passage of the ordinance. The sole remaining matter is to determine the amount. We note that damages for injuries of this nature, where no property is physically taken, are more closely akin to consequential damages than to direct damages. No one is actually dispossessed of his or her property. The trial court correctly denied London injunctive relief and reserved determination of damages for trial.

### TITLE TO VACATED EAST JAMES STREET

In its partial summary and declaratory judgment, the trial court held that "[PMC] does receive in its name all of the land subject of the street vacation involving East James Street and a portion of 17th Avenue as found in Seattle City Ordinance No. 106866 to the specific exclusion of [London]." London asserts that she obtains title to the

center of East James Street which is adjacent to her property. In 1963, under petition by PMC, the Seattle City Council vacated a portion of 17th Avenue between London's property and East Cherry Street. As a condition for that vacation, PMC was required to convey to the City for street purposes the land that became East James Street between 16th and 17th Avenues. The deed recites, "conveys and warrants to THE CITY OF SEATTLE, a municipal corporation, the following described Real Estate . . . FOR STREET PURPOSES; . . ." (Description omitted.)

Affidavits from PMC representatives and responsible city officials involved in the 1963 transaction assert it to have been the intention and understanding of the parties that PMC convey to the City a street easement only. In its memorandum opinion, the trial court stated:

> I further find that when the street is vacated, the fee title of the land reverts to the defendant, [PMC].
>
> Although RCW 35.79.040 states that upon vacation an abutting property owner shall own one–half of the property, RCW 35.79.050 states that "no vested right shall be affected by the provisions of this chapter."
>
> It would appear to me that the hospital maintained a vested right in East James Street after dedicating the entire piece of land for the street. *Rowe v. James,* 71 Wash. 267 [128 P. 539 (1912)], is authority for the rule that dedication of land for street purposes results only in an easement for the public, with the fee reserved to the dedicator. The language of the dedication document or deed would not affect the underlying fee title.

■ The general rule is that upon vacation of a street, the public easement is extinguished and the abutting property owners regain unencumbered title to the center of the street. RCW 35.79.040. This rule is based on the presumption that the abutters or their predecessors, prior to dedicating the land for street purposes, originally owned the underlying fee to the center of the street. 2 W. Elliott, *The Law of Roads and Streets* § 1191 (4th ed. rev. 1926). The general rule, however, is subject to control by the particular circumstances of the case when one abutting owner is

shown to have had no fee interest in the street and another the entire fee therein. In that instance, the abutter that had no underlying fee interest does not take to the center of the street upon its vacation. *See, e.g., Rowe v. James,* 71 Wash. 267, 128 P. 539 (1912).

Here, London never possessed the underlying fee to any part of East James Street. She acquired her property before this portion of East James Street was dedicated by PMC in 1963. RCW 35.79.050 mandates that vested rights are not to be affected upon street vacation. *See Taft v. Washington Mut. Sav. Bank,* 127 Wash. 503, 221 P. 604 (1923). Here, the evidence is that the fee to the entire width of East James Street rested in PMC. We agree with the trial court that upon vacation of the street and extinguishment of the public easement, title to all of East James Street remained vested in PMC. We need not go so far as to say the "language of the dedication document or deed" would never affect the underlying fee title. In this instance, it is clear the intent of both parties, the City and PMC, was that PMC convey an easement for street purposes and nothing more.

The partial summary and declaratory judgment of the trial court is affirmed.

STAFFORD, WRIGHT, DOLLIVER, and WILLIAMS, JJ., concur.

UTTER, C.J. (concurring in part, dissenting in part)—I concur in that portion of the majority opinion holding that injunctive relief is inappropriate and London must seek her remedy in damages. However, I cannot agree that the damage suffered is loss of a mere easement in East James Street. In my opinion, PMC should not be able to deny that London had the usual ownership rights of an abutting owner to one–half the vacated street and thus suffered loss of a fee interest.

The long established general rule governing street vacation provides that title reverts to the abutting owners, one–half to each. RCW 35.79.040; *see, e.g., Gifford v. Horton,* 54

Wash. 595, 103 P. 988 (1909). The majority does not apply this rule on the ground that the "particular circumstances" of the case control when one abutting owner has the entire fee interest in the vacated street. In such cases, it argues, the other abutting owner takes no title upon vacation. *See, e.g., Rowe v. James,* 71 Wash. 267, 128 P. 539 (1912); RCW 35.79.050. While I agree that this qualification to the general rule correctly states the law, I do not believe it is applicable in this case because the "particular circumstances" the court may consider can include other factors in the case.

We have held that no language is required in a dedication of a street to reserve the fee to the dedicators, but that the ultimate question is what the dedicator intended. *See, e.g., Rainier Ave. Corp. v. Seattle,* 80 Wn.2d 362, 365–66, 494 P.2d 996 (1972). The majority finds that PMC intended to convey only a street easement to the City and thus concludes that PMC has the entire fee upon vacation and London suffered only loss of an easement. PMC's intent is evidenced by affidavits from PMC representatives and city officials. To look to the dedicator's self–serving statements of intent in this case, out of context, as controlling on the court, obscures an apparent purpose of the creation of James Street—to compensate London for the loss of through access on 17th Avenue.

Two conveyances were filed on October 22, 1963, by PMC. Both recited they were "for and in consideration of the vacation of a portion of 17th Avenue." The first conveyed to the City of Seattle "for street purposes" the land for James Street. The second was an unrestricted deed conveying "all interest" in the land "for street purposes."

The facts on appeal show that when London purchased her property in 1960, she had access from either the north or south along 17th Avenue. Three years later, PMC petitioned for vacation of a portion of 17th Avenue lying just north of London. We have long held that a nonabutter to a vacated street who sustains injury different in kind from that suffered by the general public suffers compensable

damages. *E.g., State v. Wineberg,* 74 Wn.2d 372, 444 P.2d 787 (1968); *Taft v. Washington Mut. Sav. Bank,* 127 Wash. 503, 221 P. 604 (1923). Vacation of 17th Avenue without any change in adjacent streets would have eliminated London's through access, placing her at nearly the end of a dead–end street. The better rule is that a nonabutter in the same block as the vacated portion suffers compensable damage for loss of access in one direction. 11 E. McQuillin, *Municipal Corporations* § 30.193 (3d ed. 1977); *cf. Mott-man v. Olympia,* 45 Wash. 361, 88 P. 579 (1907) (no damages where vacation simply deflected traffic 1 block east or west and no cul–de–sac was created); *Ponischil v. Hoquiam Sash & Door Co.,* 41 Wash. 303, 83 P. 316 (1906) (no damages for property owner at entrance of newly created cul–de–sac); *see generally* 2A J. Sackman, *Nichols' Law of Eminent Domain* § 6.4443[3] (3d rev. ed. 1979).

Although London could have sought damages for loss of her through access on 17th Avenue, it is logical to conclude one reason for not doing so was what appeared to be the dedication by PMC of a full fee interest in James Street to the City and a corresponding interest in the street to abutting owners in the event it was later vacated. To now have PMC deny her even a claim to a compensable interest in that fee on the basis of its undisclosed intent is to go too far.

*Rowe v. James, supra* at 270, establishes that "the general rule may be controlled by the peculiar circumstances of the case." Here, it would be manifestly unfair for PMC to first obtain a vacation of 17th Avenue by granting what would only appear to London as a full fee interest in James Street, and then to take a different position when it was to PMC's advantage. The *Rowe* case gives this court the flexibility to strike down such action regardless of what may have been PMC's unstated intent to only grant an easement.

I would hold PMC bound by the language of its conveyance dedicating the full fee and require the trial court to assess damages to London based on the taking of her one–

half ownership interest in James Street, rather than only compensate her for the loss of an easement in James Street.

ROSELLINI, BRACHTENBACH, and HOROWITZ, JJ., concur with UTTER, C.J.

Reconsideration denied July 25, 1980.