[No. 5528-7-II.   Division Two.   January 17, 1983.]

CONCERNED OLYMPIA RESIDENTS FOR THE ENVIRONMENT, ET AL, *Appellants*, v. THE CITY OF OLYMPIA, ET AL, *Respondents*.

---

*James S. Fitzgerald,* for appellants.

*Mark O. Erickson, City Attorney,* and *Ernest L. Meyer,* for respondents.

PETRIE, J.—Concerned Olympia Residents for the Environment (C.O.R.E.) and Thomas R. Hazelrigg III, a resident of Olympia, appeal from an order dismissing their petition for a writ of certiorari and stay of proceedings. The order stated the petition was "dismissed with prejudice as to the facts in this cause for reason that Petitioners lacked standing to maintain such action". We affirm.

Respondent Sisters of Providence in Washington operate the St. Peter Hospital in the city of Olympia. In anticipation of implementing phase 7 of its master plan for expansion, the hospital proposed construction of a new psychiatric wing and parking area which will provide an additional 133,000 square feet of hospital space and additional parking spaces for 449 vehicles. Preparatory to this construction St. Peter applied to the City of Olympia for a building permit and site plan approval. On February 5, 1981, the City, as "lead agency" under the State Environ-

mental Policy Act of 1971, RCW 43.21C, issued a final Declaration of Nonsignificance.

On February 27, C.O.R.E. and Hazelrigg filed a petition in Superior Court for Thurston County seeking issuance of a writ (1) to nullify the City's action, (2) to require preparation of an environmental impact statement, and (3) to stay further action by the City pending judicial review of the validity of the Declaration of Nonsignificance. In support of the petition Hazelrigg filed an affidavit (and subsequently two additional affidavits) averring, *inter alia,* that he owns real property within 1 mile from the hospital site and also that he is chairman of the board of directors and president of C.O.R.E., a nonprofit corporation formed for the purposes of promoting concern for the environment and of encouraging intelligent utilization of environmental resources. He asserted that the City violated several State Environmental Policy Act of 1971 (SEPA) guidelines, setting forth specifically alleged failures to comply with specifically identified provisions of WAC 197–10. He averred, "[t]he proposal of St. Peter Hospital will have significant adverse environmental impacts on the environment" and then set forth 11 separate defects in the City's checklist and review process.[1] He concluded by averring that "there

---

[1]Typical of those alleged defects are the following:

"A. The area in which the hospital is located is designated in the textual comprehensive plan for Olympia as the "northeast neighborhood." The plan recognizes the fact that there are major peat bogs in the vicinity which should remain primarily in their natural condition to protect the hydrologic functioning of Indian and Woodard Creeks. There was no consideration given to the impact of the proposed expansion of the hospital on the peat bog and Woodard Creek, which the hospital is adjacent to.

". . .

"D. The checklist has no discussion of the amount of excavation planned and where the material would be placed. There is certain to be substantial material for a project of this size that needs to be relocated. Furthermore, the St. Peter Hospital addition will be adding substantial impervious site coverage. The parking area alone will be increased by more than two–thirds (⅔). Substantial grade changes will occur and there is no consideration of the existing drainage patterns of the site upon the change and addition of the impervious material. In addition there is no consideration of the impact of the additional impervious site coverage on Woodard Creek. Items 3(e) and 3(f) under

can be no question that this is a major expansion for the second largest private employer in Thurston County" and that the City's action was incorrect because "[t]here is a

---

"water" of the check list should have been checked "maybe" because of the addition of impervious site coverage.

". . .

"F. The check list is totally inaccurate in indicating that there will be no impact on present or planned land use in the area. The textual comprehensive plan indicates and recommends that low to moderate density residential uses are appropriate north of the hospital area. There needs to be some discussion or recognition of the impact of an addition of 97 beds plus a psychiatric wing will have the surrounding area. There will be pressure on the surrounding vicinity for increased medical uses which are notorious for generating traffic. There could be the impact of forcing some single family and multi–family residences out of the area. At what point will there be an evaluation made of the space available for support facilities, particularly considering the rapid growth? Such facilities include clinics, convalescent homes, professional office space and other offices, as well as housing for the additional employees of these businesses and the hospital itself. There should be a consideration of whether the medically oriented space designated on the comprehensive plan should be enlarged, and if so, what impact that will have on the area. The land uses will be more intensive and there will be more demand for similar facilities in the vacinity [sic]. It is crucial that the impact of the overall master plan of the hospital be considered and that has not been done as yet. The check list is inaccurate in stating that there will be no impact on population. The substantial expansion of the St. Peter Hospital will create more jobs. This will require more people. Additional housing will be required, the density will be increased and the distribution changed. Due to energy constraints, people will want to live closer to their jobs and none of these impacts have been considered.

". . .

"H. There has been no study of the impact of the proposal on generation of additional traffic. The textual comprehensive plan recommends that "traffic, noise and congestion should be at a minimum, a goal which requires that heavy traffic generating land uses be strictly limited both in the immediate vicinity of the medical clinics and to the north of them." No consideration has been given to the impact of the major expansion of the hospital on traffic. As stated above, plans are to increase parking spaces by two–thirds (⅔). There has been no consideration of the impact on existing transportation systems, particularly in view of the fact that Olympia has no comprehensive transportation plan. It is quite possible that Ensign Road will need improvement and there has been no evaluation of that factor. Off–site parking will increase for accessory uses also. It is crucial that an analysis of current traffic patterns at the intersection of Martin Way and Lilly Road and the capacity of that intersection be studied. Furthermore the increase of additional traffic for the hospital and accessory uses will generate additional traffic hazards for motor vehicles, bicyclists and pedestrians. This needs to be studied."

more than reasonable probability that the proposal of St. Peter Hospital will have more than a reasonable impact upon the environment." For purposes of this appeal we accept the validity of this last conclusion.

In response to an Order To Show Cause directed to the City and the hospital as to why the writ and the stay should not issue, both the City and the hospital filed a motion to dismiss the petition for the reason that petitioners "have no standing" to seek review of the City's action. The affidavit attached to the motion noted that in the petition and affidavit for issuance of the writ there was no showing that Hazelrigg or any member of the petitioning corporation "will be, as a matter of fact, injured in an economic sense or in any other sense."

Thereafter, Hazelrigg filed two additional affidavits. In one he averred in part as follows:

5. Your affiant, as a property owner in the near vicinity of the hospital, will clearly be affected by the proposed hospital expansion, although without an environmental impact statement the exact impact cannot and has not been assessed. In any event your affiant expects that it will be detrimental and that your affiant will suffer an injury in fact, both economic and physical.

6. Your affiant believes that the injury described above that will be suffered is sufficient to give your affiant standing to challenge the arbitrary and capricious and wrong action of the City of Olympia. However, your affiant has additional interests of considerable magnitude which are threatened. Your affiant owns a substantial amount of property on the west side of Olympia in the vicinity of where Hospital Corporation of America (hereinafter designated "HCA") intends to build a hospital. Said company has purchased 21.7 acres from your affiant and has an option to purchase an additional 31 acres. The property under option is the intended location for the proposed hospital. The company has applied for a certificate of need from the State Department of Social and Health Services.

In the event the certificate of need is not granted, it is highly unlikely that the company will build the hospital or exercise its option to purchase the property. In that

event your affiant stands to suffer a financial loss in excess of 1.6 million dollars.

Following oral argument on respondent's motion, the court ruled orally that the pleadings before the court did not establish "an interest in CORE or Mr. Hazelrigg to attack the negative impact statement."

Petitioners filed a motion for reconsideration and at the hearing on that motion filed Hazelrigg's third affidavit which declared in part:

2. Your affiant has already alleged in previous affidavits that he believes he will suffer an injury in fact, both economic and physical, resulting from the expansion of the St. Peter Hospital. In the Affidavit of Thomas R. Hazelrigg, III in Support of Writ of Certiorari and Stay of Proceedings, your affiant states with specificity various potential detrimental impacts of the proposed hospital addition and your affiant herein specifically alleges that he will suffer all of these impacts personally on his property described above.

The court denied petitioners' motion and entered the order which is on appeal herein.

We give short shrift to Hazelrigg's contention that potential loss of profit from sale of his property on the west side of Olympia to a potentially competing hospital gives him standing to obtain this extraordinary writ. That type of "economic harm" is not even arguably within the "zone of interest" protected or regulated by enactment of the State Environmental Policy Act of 1971.

We turn then to consideration of the effect of Hazelrigg's allegation that he also owns 2 acres which are approximately 3,500 feet due west of St. Peter Hospital. We note, initially, that this is not his residence and, further, there is no allegation that the property is developed or that he uses or intends to use it for any purpose whatsoever. The City and St. Peter contend his averments, that he will personally suffer from the specified "potential detrimental impacts" and that, therefore, he has standing to challenge the City's action are conclusory statements only. Hazelrigg contends, on the other hand, that similar allegations were sufficient to

warrant issuance of a writ of certiorari in *Save a Valuable Env't v. Bothell,* 89 Wn.2d 862, 576 P.2d 401 (1978). Neither party moved to strike any affidavit.

The central issue to be resolved is whether Hazelrigg's several affidavits collectively demonstrate sufficient evidentiary facts to indicate that he will suffer an "injury in fact" unless the City is mandated to require St. Peter to file an environmental impact statement. *Bothell* adopted the federal rule for determining that sufficiency, citing *Warth v. Seldin,* 422 U.S. 490, 45 L. Ed. 2d 343, 95 S. Ct. 2197 (1975) and *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 37 L. Ed. 2d 254, 93 S. Ct. 2405 (1973).

Obviously, Hazelrigg's bald assertion that he has standing to challenge the City's action is insufficient. *State ex rel. Warner v. Superior Court,* 97 Wash. 472, 166 P. 791 (1917). More to the point is the allegation in his final affidavit that "he will suffer all of these impacts[2] personally on his property." We hold that this too is insufficient to invoke the extraordinary jurisdiction of the courts.

The sole source of jurisdiction to review Olympia's discretionary determination not to require an environmental impact statement is the inherent and constitutional judicial review power. *Coughlin v. Seattle Sch. Dist. 1,* 27 Wn. App. 888, 621 P.2d 183 (1980). To invoke this review the petitioner must first establish standing to challenge the City's action by presenting facts that show a direct adverse effect upon him if the court does not exercise its extraordinary authority. *Coughlin v. Seattle Sch. Dist. 1, supra.* That showing is made through affidavits which set forth evidentiary facts. Here, Hazelrigg does not set forth any evidentiary facts to prove that he will sustain an "injury in fact." He does not, for example, present any evidence which would support his bald assertion of injury to his person or property if the hydrologic functioning of the creeks which

---

[2]Referring to the 11 specific assertions, several of which have been noted in footnote 1, *supra.*

lie between his property and the hospital were to be impaired. Nor does he indicate in what way he or his property would be injured by reason of the grade changes or addition of impervious site coverage. Similarly, he fails to present any evidentiary fact as to how he or his property would be injured by any of the other alleged defects in the City's review of the extent of the environmental impact occasioned by St. Peter's proposed building project. Unless a litigant can demonstrate a direct stake in the controversy, *i.e.,* that he will be specifically and perceptibly harmed, he cannot invoke judicial intervention. Otherwise, the judicial process will become no more than a vehicle for the vindication of value interests of concerned bystanders. *See United States v. SCRAP, supra.*

Finally, C.O.R.E. has no more standing than that provided by one of its members. *United States v. SCRAP, supra.* There is no attempt here to assert C.O.R.E.'s standing other than that provided through Hazelrigg. *Save a Valuable Env't v. Bothell, supra,* is inapposite. There, several of Save's members were satisfactorily shown to have been threatened with real injury because they resided within the area immediately adjoining the site of a project which would convert farmland into a major regional shopping center. We find no similarity here.

Judgment affirmed.

WORSWICK, A.C.J., and REED, J., concur.

Reconsideration denied March 8, 1983.