[No. 6705-6-II. Division Two. December 27, 1984.]

ROBERT DEWEESE, ET AL, *Appellants,* v. THE CITY OF PORT TOWNSEND, ET AL, *Respondents.*

*J. Richard Aramburu,* for appellants.

*Keith C. Harper, City Attorney,* for respondent Port Townsend.

*Thomas J. Majhan,* for respondent Kah Tai Care Center.

WORSWICK, A.C.J.—We are asked to decide whether traditional rules for determining standing to challenge a street vacation apply where the street in question abuts a body of water. We hold that broader principles apply, and reverse a trial court ruling to the contrary.

Lawrence Street runs in a northeast–southwest direction within Port Townsend. It is developed and open for traffic northeast of Kearney Street. Kearney, developed and open for traffic, crosses Lawrence at a right angle. Lawrence, although platted southwest of Kearney, is undeveloped between Kearney and the point where it abuts the Kah Tai lagoon, a body of water lying southwest of Kearney. Decatur Street, platted but unopened in the vicinity of Lawrence, parallels Kearney to the southwest. The right of way of Decatur in that vicinity would take it under or close along the edge of the lagoon (see sketch).[1]

Kah Tai Care Center, Inc.'s facility is on the edge of the lagoon southwest of Kearney and northwest of the undeveloped fragment of Lawrence. Wanting to expand to property on the other side of the Lawrence fragment, the Care Center prevailed on the City to vacate it. The city council obliged.

---

[1] This sketch was prepared by our staff, based upon a map of Port Townsend and upon the meager record available to us of the layout of the streets.

Robert and Kristine DeWeese and Stephen and Jeneen Hayden, challenging the vacation ordinance, petitioned the superior court for a statutory writ of certiorari, contending that the ordinance was illegal because the portion of Lawrence vacated abuts a body of water. They relied on the proviso to RCW 35.79.030 which states:

That no city or town shall be authorized or have authority to vacate such street, or alley, or any parts thereof if any portion thereof abuts on a body of salt or fresh water unless such vacation be sought to enable the city, town, port district or state to acquire the property for port purposes, boat moorage or launching sites, park, viewpoint, recreational, or educational purposes, or other public uses.

The Care Center and the City attacked the petitioners' standing, pointing out that none of them owns property abutting the vacated portion of the street, and that no right of access to any of their property is affected. The trial court dismissed the petition. On appeal, petitioners contend that the traditional rules for determining standing should not apply because of the distinctive provisions of this proviso. We agree.

At the outset, we note that certiorari is a proper method for initiating judicial review of a city ordinance claimed to be illegal. *See Parkridge v. Seattle,* 89 Wn.2d 454, 573 P.2d 359 (1978). In such a proceeding, findings made as part of the ordinance can be tested to determine if they are supported by evidence. *Miller v. Tacoma,* 61 Wn.2d 374, 378 P.2d 464 (1963).[2] The court always has power, before dealing with substantive issues, to determine the jurisdictional facts. *State ex rel. Hood v. Washington State Personnel Bd.,* 82 Wn.2d 396, 511 P.2d 52 (1973). However, standing is a substantive, not jurisdictional, question. *Hoskins v. Kirkland,* 7 Wn. App. 957, 961, 503 P.2d 1117 (1972). Nevertheless, it is desirable in the interests of an orderly proceeding that it be determined, as here, as if it were jurisdictional, before other substantive issues are considered.[3]

Standing to challenge street vacations traditionally has been limited to owners of property directly abutting the portion of the street being vacated, or to those whose right of access to their property is substantially affected. *Capitol Hill Methodist Church v. Seattle,* 52 Wn.2d 359, 324 P.2d 1113 (1958). The cases which first announced these limita-

---

[2]The city council found in this ordinance that the vacated portion of Lawrence Street did not abut a body of water. Petitioners dispute this; thus a major issue for review by certiorari has been joined. We express no opinion as to the validity of this finding.

[3]We stress here that the propriety of the trial court's resolution of the standing question—on the very limited basis employed in this case—is the only issue presented by this appeal.

tions were decided long before the 1967 amendment to RCW 35.79.030 adding the pertinent proviso.[4] Those cases dealt with laws granting municipal authorities broad discretion as to street vacations. *See, e.g., Ponischil v. Hoquiam Sash & Door Co.*, 41 Wash. 303, 83 P. 316 (1906). *Ponischil* held that only persons who suffered special damages different in kind from those experienced by the general traveling public could challenge a street vacation. *Taft v. Washington Mut. Sav. Bank*, 127 Wash. 503, 221 P. 604 (1923) was the first case to hold clearly that only those whose property abuts the portion of the street being vacated, or whose rights of access would be substantially affected, could challenge a street vacation. *Taft* held that municipalities had discretion to vacate any portion of any street, without limitation as to the size or location of the particular part chosen. The *Taft* court stated:

> The further rule, deducible from our own cases and the authorities generally, is that owners of property abutting on a street or alley have no vested right in such street or alley except to the extent that their access may not be unreasonably restricted or substantially affected. Owners who do not abut, such as respondents here, and whose access is not destroyed or substantially affected, have no vested rights which are substantially affected.

*Taft*, 127 Wash. at 509–10.[5]

These cases announced the substantive principle that only persons dependent on a street for direct access to their properties have any legally recognized interest in keeping it open. More simply stated, those who are not dependent on a street are not injured when it is vacated. *Hoskins v. Kirkland, supra.* This principle is not only reasonable but obviously necessary with reference to the vacation of streets as ordinary routes of travel. To enlarge the rights of the general traveling public would be to restrict unduly the

---

[4]Laws of 1967, 1st Ex. Sess., ch. 129, § 1, p. 2182–83.

[5]*See also Freeman v. Centralia*, 67 Wash. 142, 120 P. 886 (1912) which rejected a claim by a nonabutting owner that a vacation amounted to a compensable taking of a right to travel freely over a previously more open street system.

discretion granted to municipalities for the management of streets. *See Ponischil,* 41 Wash. at 308–09.

In view of the RCW 35.79.030 proviso, we are obviously dealing here with something different from an ordinary street vacation. The question, then, is whether the standing rules are different. We think they are.[6]

■ Cities are vested with only such powers over streets as are conferred by the Legislature. *Yarrow First Assocs. v. Clyde Hill,* 66 Wn.2d 371, 403 P.2d 49 (1965). The Legislature can, therefore, change the law controlling vacations. By enacting the proviso, it has done so. The proviso eliminates discretion with reference to streets abutting bodies of water. It is our duty to interpret the language of the proviso to give it meaning and effect in light of the legislative purpose. *Nucleonics Alliance Local 1–369 v. WPPSS,* 101 Wn.2d 24, 677 P.2d 108 (1984); *Washington Water Power Co. v. State Human Rights Comm'n,* 91 Wn.2d 62, 586 P.2d 1149 (1978). If challenges based on the proviso are limited to those allowed with reference to ordinary street vacations, the proviso would be nullified for all practical purposes, as few property owners would be directly affected. Therefore, we must interpret the proviso as enlarging the class having a legally protected interest in seeing the affected street remain open.

This should be no surprise. This state has long recognized an interest in the public to water access over public

---

[6]Our Supreme Court has noted that standing doctrines from early cases in general were merely statements of the interests protected by the law, and that modern standing analysis is somewhat broader;

> In the past, infringement of a specific legal right or interest was required for standing. However, in recent years there has been a trend to permit a broader view of factual interests that will give rise to standing. . . .
>
> The "legal interest" test goes to the merits. The question of standing is different. It concerns, apart from the "case" or "controversy" test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.

(Citations omitted.) *Blondheim v. State,* 84 Wn.2d 874, 876–77, 529 P.2d 1096 (1975). *See also Save A Valuable Env't v. Bothell,* 89 Wn.2d 862, 576 P.2d 401 (1978).

streets. In *Albee v. Yarrow Point,* 74 Wn.2d 453, 445 P.2d 340 (1968) the Supreme Court quoted with approval the following portion of an Attorney General opinion:

Thus, dedication to the use of the public of a street extending to the shore of a lake will be presumed to have been intended to enable the public to have access to the water for all proper public purposes.

(Citations omitted.) *Yarrow Point,* 74 Wn.2d at 457. In *Wyckoff v. Seattle,* 60 Wn.2d 100, 371 P.2d 935 (1962), the court said:

A reading of the 1889–90 and 1895 statutes relating to the platting and sale of tidelands, discloses that the legislature had in mind the desirability, if not the absolute necessity, of maintaining means of public access to the water front in and around cities, and that the provisions for the platting of streets and other public ways, to be subject to the control of cities, were included to effect this desired end.

*Wyckoff,* 60 Wn.2d at 103–04. The RCW 35.79.030 proviso was plainly meant to keep such public access open with only limited exceptions.

■ Because the proviso protects a general public right, standing to challenge claimed violations must be measured by the standards relating to challenges of any illegal government act. Therefore, we hold that any member of the public has standing who has suffered an injury in fact personal to himself which is arguably within the zone of interest protected by the proviso. *Blondheim v. State,* 84 Wn.2d 874, 529 P.2d 1096 (1975); *Casebere v. Clark Cy. Civil Serv. Comm'n,* 21 Wn. App. 73, 584 P.2d 416 (1978).

What is that zone of interest? Appellants contend it is coextensive with the zone of interest protected by the State Environmental Policy Act of 1971, RCW 43.21C, because the proviso is an environmental law. We disagree. SEPA concerns broad questions of environmental impact, identification of unavoidable adverse environmental effects, choices between long and short term environmental uses, and identification of the commitment of environmental resources. *Leschi Imp. Coun. v. State Hwy. Comm'n,* 84

Wn.2d 271, 525 P.2d 774 (1974). To illustrate the difference: if a city were to vacate a street in order to fill a wetland and build a public port facility, its action would not be a violation of the proviso, but nevertheless probably would be subject to SEPA.

The zone of interest created by the proviso must be determined from the intent of the Legislature, as shown by the language of the statute itself. *Human Rights Comm'n v. Cheney Sch. Dist. 30,* 97 Wn.2d 118, 641 P.2d 163 (1982). The statute is intended to preserve public use of waterfront rights of way. Therefore, standing must be based on injury to an interest which is functionally related to public access to the water.[7] A challenger must allege an actual injury in fact, personal to himself. This injury must be direct and must be demonstrated with at least some precision. *Concerned Olympia Residents for the Env't v. Olympia,* 33 Wn. App. 677, 657 P.2d 790 (1983); *Coughlin v. Seattle Sch. Dist. 1,* 27 Wn. App. 888, 621 P.2d 183 (1980).

The showing appellants made below as to standing is virtually devoid of these necessary factual assertions. However, the trial court did not consider this factual deficiency in passing on standing. Therefore, we consider it appropriate that, on remand, appellants be afforded the opportunity to make the proper showing. The trial court can then determine standing as guided by this opinion.

Reversed. Remanded for further proceedings consistent with this opinion.

PETRIE and REED, JJ., concur.

---

[7]Although the question is not now before us, we feel it necessary to point out that we do not believe the Legislature intended that portions of a street distant from its water abutment be subject to the proviso.