[No. 33287-2-I. Division One. September 19, 1994.]

SNOHOMISH COUNTY PROPERTY RIGHTS ALLIANCE, ET AL, *Appellants*, v. SNOHOMISH COUNTY, ET AL, *Respondents.*

*Douglas James Smith*, for appellants.

*Seth R. Dawson, Prosecuting Attorney*, and *Evelyn Sue Allen Tanner, Deputy*, for respondents.

SCHOLFIELD, J. — Snohomish County Property Rights Alliance and Darrell R. Harting, a Snohomish County resident and property owner (collectively SNOCO, unless otherwise indicated) challenge the trial court's order granting summary judgment dismissing SNOCO's application for a writ of certiorari to have the trial court review Snohomish County's (the County's) compliance with the State Environmental Policy Act of 1971 (SEPA), RCW 43.21C, in conjunction with the adoption of countywide planning policies. We affirm.

## FACTS

On February 4, 1993, the Snohomish County Council passed by ordinance countywide planning policies. As a necessary part of that process, the Council approved and accepted the Environmental Impact Statement (EIS) addendum submitted by the planning director. SNOCO protested this acceptance of the EIS addendum in lieu of a supplemental EIS and claimed that the EIS addendum would fail to meet the requirements of SEPA.

On March 4, 1993, SNOCO applied for a writ of certiorari seeking review in the trial court of the County's compliance with SEPA prior to passage of the countywide planning policies.[1] In its answer, the County admitted that the coun-

---

[1]RCW 43.21C.080(2)(a) governs such a challenge in part as follows:

"Any action to set aside, enjoin, review, or otherwise challenge any such governmental action for which notice is given as provided in subsection (1) of this section on grounds of noncompliance with the provisions of this chapter shall be commenced within thirty days from the date of last newspaper publication of the notice pursuant to subsection (1) of this section, or be barred . . .".

tywide planning policies required it to conduct an environmental review pursuant to SEPA. The County also admitted that for purposes of SEPA compliance, the planning director, under the direction of the County Executive, made a formal finding of probable significant adverse environmental impacts resulting from the proposed countywide planning policies. However, the County alleged lack of standing as an affirmative defense.

On April 1, 1993, the trial court issued a writ ordering the County to return a full transcript of the record of proceedings involving the EIS and its addendum to be issued by the County as to the countywide planning policies. On April 29, 1993, the County moved for summary judgment quashing the trial court's Writ and dismissing SNOCO's application for a writ of certiorari. In opposition to the County's Motion for Summary Judgment, SNOCO filed a Brief and several declarations and affidavits. The County moved to strike portions of each of the declarations and affidavits for failure to meet the requirements of CR 56(e),[2] as well as part of SNOCO's Brief. SNOCO then filed additional declarations opposing the County's Motion to Strike. The County moved to strike those declarations as well.

After considering all of the affidavits and declarations submitted, together with the County's Motion for Summary Judgment, the court concluded that all of SNOCO's declara-

---

[2]CR 56(e) provides in part as follows:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

tions and affidavits[3] were speculative and conclusory and failed to present evidentiary facts. Rather than striking the declarations and affidavits, however, the court found that SNOCO failed to raise a material issue of fact for trial and entered summary judgment for the County dismissing SNOCO's application for a writ of certiorari and quashing the Writ previously issued. In addition, the trial court found as a matter of law that SNOCO had no standing under SEPA, which limits standing to cities, counties, and the Governor.[4] The court therefore concluded that "the question [came] down to standing in the form of an application for a writ of certiorari", pursuant to RCW 7.16.040.

The court found as a matter of law that the Council's action passing the planning policies on February 4, 1993, was clearly legislative and thus not subject to a writ of certiorari under RCW 7.16.040. Finally, the court ruled that, although it could review such matters pursuant to its inherent power under article 4, section 6 of the Washington Constitution, a party must first demonstrate it has standing to seek review, which SNOCO had failed to do.

This appeal timely followed.

## STANDING

The issue before us is whether SNOCO has standing to seek judicial review of the County's compliance with SEPA, in conjunction with the planning policies adopted by the County pursuant to the growth management act (GMA), RCW 36.70A.

---

[3] The court does not specifically refer to affidavits. However, the language of the ruling indicates that when the court said declarations, it meant both declarations and affidavits.

[4] The trial court appears to have been incorrect in identifying SEPA as denying standing. Because RCW 36.70A.210(6) limits standing to "[c]ities and the governor", we assume that the trial court did not mean to include counties. Former RCW 36.70A.210(6) provides for appeals under the growth management act, RCW 36.70A, as follows:

"(6) Cities and the governor may appeal an adopted county-wide planning policy to the growth planning hearings board within sixty days of the adoption of the county-wide planning policy."

SNOCO contends that it has standing to bring an action to seek the trial court's review of the County's compliance with SEPA in conjunction with the adoption of the county-wide planning policies because the facts presented show direct and immediate injury from the administrative decision of the county planning director. The County responds that SNOCO lacks standing under either the GMA or SEPA to bring this action because there is no specific statutory appeal right provided under either RCW 36.70A or the county charter for SEPA review. The County also argues that SNOCO has no right to a writ of certiorari because the countywide planning policies are legislative in nature, rather than quasi judicial.

Statutory Writ of Certiorari. Because SNOCO has no standing to appeal under the GMA or SEPA,[5] the issue becomes whether SNOCO may acquire standing in the form of an application for a writ of certiorari under RCW 7.16.040.[6] Under that statute, a writ of certiorari may be granted only to review agency action that is quasi judicial in nature. *Raynes v. Leavenworth*, 118 Wn.2d 237, 244, 821 P.2d 1204 (1992).

■ A 4-part test has been developed to determine when a given action is quasi judicial or legislative in relation to a

---

[5]Standing to appeal an adopted countywide planning policy is limited under the GMA to cities and the Governor, and an appeal must be filed with the growth planning hearings board. RCW 36.70A.210(6). Thus, SNOCO has no statutory right under the GMA to appeal the adoption of the countywide planning policies and has not sought such an appeal. Similarly, standing to appeal adoption of the countywide planning policies (the underlying governmental action required for purposes of a SEPA appeal) to the growth planning hearings board is limited by statute to cities and the Governor. RCW 36.70A.210(6); *see also State ex rel. Friend & Rikalo Contractor v. Grays Harbor Cy.*, 122 Wn.2d 244, 249, 857 P.2d 1039 (1993) (the general rule in both administrative and judicial SEPA appeals is that they must combine review of SEPA issues with the related governmental action).

[6]RCW 7.16.040 reads as follows:

"A writ of review shall be granted by any court, except a municipal or district court, when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer, or one acting illegally, or to correct any erroneous or void proceeding, or a proceeding not according to the course of the common law, and there is no appeal, nor in the judgment of the court, any plain, speedy and adequate remedy at law."

writ. *Raynes*, at 244. Courts examine the following factors to decide if the actions taken are functionally similar enough to court proceedings to warrant judicial review:

> (1) whether the court could have been charged with the duty at issue in the first instance; (2) whether the courts have historically performed such duties; (3) whether the action of the municipal corporation involves application of existing law to past or present facts for the purpose of declaring or enforcing liability rather than a response to changing conditions through the enactment of a new general law of prospective application; and (4) whether the action more clearly resembles the ordinary business of courts, as opposed to those of legislators or administrators.

*Raynes*, at 244-45 (quoting *Standow v. Spokane*, 88 Wn.2d 624, 631, 564 P.2d 1145, *appeal dismissed*, 434 U.S. 992 (1977)).

 A review of the above factors indicates that the County Council's action on February 4, 1993, was legislative and not quasi judicial. (1) The actions taken by the county planning director to comply with SEPA for countywide planning policies were administrative in nature and were not similar to judicial factfinding and dispute resolution. Thus, the court could not have been charged with the duty at issue in the first instance. (2) The courts have not historically performed the function of ensuring that counties comply with SEPA. That is a function best left to administrative bodies. (3) The County's action did not involve application of existing law to past or present facts, but rather, an enactment of new general law of prospective application. (4) The action more clearly resembles a legislative act. Accordingly, the County's SEPA compliance for the countywide planning policies is not subject to review pursuant to the writ statute.

 SNOCO cites *Save a Valuable Env't v. Bothell*, 89 Wn.2d 862, 576 P.2d 401 (1978) (*SAVE*) in support of its argument that individual property owners have standing to challenge SEPA decisions. *SAVE* involved a rezone of a parcel of farmland to permit construction of a major shopping center. *SAVE*, at 863-64. Save a Valuable Environment (SAVE) was a nonprofit corporation whose membership included people who resided next to the rezoned property and made specific allega-

tions of perceptible injury. *SAVE*, at 865. Applying a 2-part test for proving standing,[7] the court held SAVE had standing under those circumstances. *SAVE*, at 865. The result in *SAVE* has no bearing on the issue in the present case where the County Council's action was legislative and not quasi judicial and, therefore, did not warrant judicial review. Furthermore, SNOCO is unable to meet this test as discussed below in the context of SNOCO's constitutional argument.

SNOCO also argues that it has standing to challenge administrative or legislative action because it represents a class of third parties. In support of this argument it cites *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 37 L. Ed. 2d 254, 93 S. Ct. 2405 (1973), *High Tide Seafoods v. State*, 106 Wn.2d 695, 725 P.2d 411 (1986), *appeal dismissed*, 479 U.S. 1073 (1987), and *SAVE*. SNOCO overlooks the fact that *SCRAP*

> conferred standing to obtain judicial review of agency action only upon those who could show "that the challenged action had caused them 'injury in fact,' and where the alleged injury was to an interest 'arguably within the zone of interests to be protected or regulated' by the statutes that the agencies were claimed to have violated."

*Scrap*, at 686 (quoting *Sierra Club v. Morton*, 405 U.S. 727, 31 L. Ed. 2d 636, 92 S. Ct. 1361 (1972). SNOCO is unable to meet this test as discussed below.

*High Tide* is equally unhelpful to SNOCO's claim because in that case the court made no finding of standing since the petitioners were unable to meet the second part of the *SCRAP* test — that they would be able to prove their injury fell within the zone of the fishing rights of treaty Indians. *High Tide*, at 702.

Accordingly, SNOCO has failed to show that it has standing to seek a statutory writ of certiorari.

---

[7]The test requires that (1) the interest sought to be protected be " 'arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question,' " and (2) the petitioner allege the challenged action has caused " 'injury in fact' ". *SAVE*, at 866 (quoting *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152-53, 25 L. Ed. 2d 184, 90 S. Ct. 827 (1970)).

Constitutional Writ of Certiorari. SNOCO also argues that it has standing to seek a writ based on the inherent right of the superior court to permit writs of certiorari under article 4, section 6 of the state constitution. To invoke this review, the petitioner must first establish standing to challenge the governmental action.

This court applies a 2-part test in determining whether a person or entity has standing to challenge a SEPA determination under a statutory or a constitutional writ of certiorari. *Trepanier v. Everett*, 64 Wn. App. 380, 382, 824 P.2d 524, *review denied*, 119 Wn.2d 1012 (1992).[8] First, the interest that the petitioner seeks to protect must be " ' "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question' ". *Trepanier*, at 382 (quoting *SAVE*, at 866).

Here, the Petition and supporting declaration of Darrell Harting demonstrate no interests even arguably within the zone of interests sought to be protected by SEPA. Harting alleges that he has the interests of "a resident, property owner and taxpayer of Snohomish County" and an interest in the "protection of individual property rights", and that Petitioners are "interested parties" in the council proceedings on the countywide planning policies and have been "active in seeking full public participation in the planning procedure". In addition, a review of the affidavits and declarations submitted in opposition to the Motion for Summary Judgment indicates that SNOCO's interests are primarily economic in nature because the affidavits and declarations are concerned with matters such as property values, property taxes, restrictions on the use of property as affecting property value, and the cost of transportation facilities. These economic interests are not within the zone of interests protected by SEPA. *See* RCW 43.21C.010, .020; *Concerned Olympia Residents for Env't v. Olympia*, 33 Wn. App. 677, 682, 657 P.2d 790 (1983).[9] SEPA is concerned

---

[8]This test applies both in constitutional certiorari cases as well as statutory certiorari cases. *See Trepanier*, at 382 n.1.

[9]RCW 43.21C.010 states:

"The purposes of this chapter are: (1) To declare a state policy which will encourage productive and enjoyable harmony between man and his environment;

with "broad questions of environmental impact, identification of unavoidable adverse environmental effects, choices between long and short term environmental uses, and identification of the commitment of environmental resources." *DeWeese v. Port Townsend,* 39 Wn. App. 369, 375, 693 P.2d 726 (1984). The Petition, affidavits, and declarations state no interests within the zone of environmental interest.

Second, the petitioner must allege an " ' "injury in fact", *i.e.*, that he or she will be " 'specifically and perceptibly harmed' " by the proposed action. *Trepanier,* at 382 (quoting *SAVE,* at 866). *See also Concerned Olympia Residents for Env't,* at 683. In other words, SNOCO must present evidentiary facts that show a direct adverse effect upon it if the court does not exercise its extraordinary authority. *Coughlin v. Seattle Sch. Dist. 1,* 27 Wn. App. 888, 893, 621 P.2d 183 (1980); *Concerned Olympia Residents for Env't,* at 683. Further, in order to show injury in fact, SNOCO must present facts that show it will be adversely affected by the County's supposed failure to comply with SEPA. Its affidavits must collectively demonstrate sufficient evidentiary facts to indicate that it will suffer an injury in fact. *Trepanier,* at 383. The pleadings and proof are insufficient if they merely reveal imagined circumstances in which the plaintiff could be affected. *Coughlin,* at 893; *Trepanier,* at 383 (when a person alleges threatened injury, as opposed to existing injury, he or she must show immediate, concrete, and specific injury to him or herself; if the injury is merely conjectural or hypothetical, there can be no standing).

Here, SNOCO has failed to present facts that show that it or its property would be injured by the County's SEPA action. *See Trepanier,* at 383. The affidavits and declarations fail to set forth facts which are evidentiary in nature. Instead, they are speculative and assert conclusions as to anticipated future effects of the countywide planning. They are economic in

---

(2) to promote efforts which will prevent or eliminate damage to the environment and biosphere; (3) and stimulate the health and welfare of man; and (4) to enrich the understanding of the ecological systems and natural resources important to the state and nation."

nature and fail to assert specific SEPA violations or interests. They fail to allege injury in fact. Accordingly, they are inadequate to demonstrate the "immediate, concrete, and specific injury" required for standing to challenge the County's compliance with SEPA for the countywide planning.

SNOCO cites *Anderson v. Island Cy.*, 81 Wn.2d 312, 501 P.2d 594 (1972) to support its argument that our Supreme Court acknowledged plaintiffs' standing merely because they were citizens of the county where a challenged concrete plant was proposed to be developed. SNOCO misconstrues *Anderson.* In *Anderson,* the petitioners were not merely citizens of the county, but were neighboring landowners whose quiet enjoyment of residence was threatened by the activities of a batching plant operated by Island Sand and Gravel, Inc., and by the rulings of the board of commissioners and the trial court in perpetuating and extending that operation. *Anderson,* at 315. In contrast, no evidence exists in the present case to show that SNOCO's interests are affected or that some harm is occurring.

SNOCO next cites *Byers v. Board of Clallam Cy. Comm'rs*, 84 Wn.2d 796, 797-98, 529 P.2d 823 (1974), in which a court granted standing to citizens, taxpayers, and residents to challenge an interim zoning code which affected their area of residence. However, *Byers* is distinguishable from the present case in that it involved a zoning ordinance, whereas the present case involves a countywide planning policy. A zoning ordinance is an "official control" as defined in RCW 36.70, the Planning Enabling Act of the State of Washington,[10] and as such regulates the way specific parcels of property can be used. The County concedes that residents and owners of property affected by such a detailed regulation have standing to challenge such an ordinance. On the other hand, because

---

[10] " 'Official controls' means legislatively defined and enacted policies, standards, precise detailed maps and other criteria, all of which control the physical development of a county or any part thereof or any detail thereof, *and are the means of translating into regulations and ordinances all or any part of the general objectives of the comprehensive plan. Such official controls may include,* but are not limited to, ordinances establishing *zoning,* subdivision control, platting, and adoption of detailed maps." (Italics ours.) RCW 36.70.020(11).

of its broad nature, a planning policy does not regulate specific parcels, and thus, standing of a citizen is not as easily established.

Accordingly, SNOCO does not have standing to acquire either a statutory or a constitutional writ of certiorari. Because we affirm based on SNOCO's lack of standing, we decline to address the issue of whether the affidavits and declarations submitted by SNOCO raise a genuine issue of material fact.

Judgment affirmed.

WEBSTER, C.J., and BAKER, J., concur.

Review denied at 125 Wn.2d 1025 (1995).