IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| COALITION OF CHILIWIST RESIDENTS AND FRIENDS, an Association of multiple concerned residents of the Chiliwist Valley, RUTH HALL, ROGER CLARK, JASON BUTLER, WILLIAM INGRAM, and LOREN DOLGE, Chiliwist Valley residents or property owners, | ) ) ) ) ) ) ) ) ) ) | No. 34585-8-III |
| Appellants, | ) ) ) | |
| v. | ) ) ) | UNPUBLISHED OPINION |
| OKANOGAN COUNTY, a Municipal Corporation, and Political Subdivision of the State of Washington; RAYMOND CAMPBELL, SHEILAH KENNEDY, and JAMES DETRO, Okanogan County Commissioners; DANIEL BEARDSLEE, Okanogan County Hearings Examiner, JOSHUA THOMPSON, Okanogan County Engineer, JOHN CASCADE GEBBERS, JOHN WYSS, and GAMBLE LAND & TIMBER Ltd., a Washington Corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

LAWRENCE-BERREY, A.C.J. — Coalition of Chiliwist Residents and Friends (Coalition) appeals the summary dismissal of their complaint that primarily sought to void Okanogan County (County) Board of County Commissioner's (BOCC) order vacating a portion of Three Devils Road. We hold that the BOCC's action of vacating a portion of that road was a legislative function, and thus susceptible only to a narrow judicial review. We further hold that Coalition has failed to present sufficient facts that would permit a rational trier of fact to find that the BOCC engaged in the type of improper conduct that would permit judicial review, i.e., fraud, collusion, or interference with any of its members' vested rights. We, therefore, affirm the summary dismissal of Coalition's claims.

## FACTUAL BACKGROUND AND PROCEDURE

In the early 1950s, the Otto Wagner family built Three Devils Road as a logging road in rural Okanogan County. Three Devils Road, approximately 4.8 miles in length, was included in the County network of roads as part of a 1955 resolution opening certain roads as County roads. The western end of Three Devils Road extends into property owned by the United States Forest Service (USFS), and the eastern end of the road extends to Chiliwist Road. Gamble Land & Timber, Ltd., (Gamble) owns property along both sides of an approximate 3 mile stretch of Three Devils Road, ending at the USFS boundary.

2

On February 19, 2015, Gamble petitioned the County to vacate that portion of Three Devils Road surrounded by its property.[1] Because the USFS had satisfactory alternate access, it did not oppose Gamble's petition. The BOCC accepted the petition and, pursuant to RCW 36.87.040, directed the County engineer to generate a report and make a recommendation on whether the BOCC should vacate the road.

The engineer's March 12, 2015 report notes that Gamble performed all maintenance on Three Devils Road. The report also notes that Three Devils Road was classified as primitive and unimproved and saw minimal traffic. The report also notes that a gate blocked Three Devils Road at the entrance to the USFS land. The County engineer concluded that the road was useless as part of the county road system, and recommended that the BOCC vacate the road.

The BOCC then directed a hearing officer to conduct a public hearing pursuant to RCW 36.87.060(2). Under that subsection, the hearing officer must consider the engineer's report and public testimony and exhibits, and then prepare a record of the proceedings and make a recommendation to the county legislative authority concerning the petition.

---

[1] For convenience, we will refer to the approximate 3 mile portion as "the road," and the 4.8 mile road as Three Devils Road.

Dan Beardslee, the County's hearing examiner, presided over the April 9, 2015 public hearing. In his May 2, 2015 posthearing report, he notes he received a petition signed by over 200 people opposing Gamble's petition, and that most of the signatories lived in the Chiliwist Valley or the surrounding area. In addition, his report notes that nearly 100 people attended the hearing, 18 people provided testimony, and of those 18, all but 1 opposed Gamble's petition. The hearing examiner's report provides a short summary of these testimonies. Many of the testimonies in opposition to Gamble's petition emphasized the need for the road as an escape route in the event of a wildfire. In the report, the hearing examiner notes Gamble's arguments in support of its petition, but determines that "[t]he testimony by citizens, both oral and written, particularly with respect to the utility of the road as an emergency evacuation route is far more compelling." Clerk's Papers (CP) at 741. The hearing examiner noted the overwhelming opposition to Gamble's petition, the usefulness of the road as an emergency evacuation route, as a scenic route, and as a connector to USFS lands. The hearing examiner's report concludes:

> . . . While the Hearing Examiner is sympathetic of the needs of Gamble to properly manage their land and protect their private property rights, they have not adequately demonstrated that the road should be vacated as useless to the County Road system, or that the public will be benefitted by the vacation.
>
> . . . .

4

> Based upon the information [considered] it is the recommendation of the Hearing Examiner that the petition for vacation of Three Devils Road be denied and the road not be vacated.

CP at 742-43.

On May 18, 2015, Gamble filed a memorandum supporting its motion for reconsideration of the hearing examiner's decision. In its request, Gamble asserted that many of the hearing examiner's findings—especially those relating to the importance of the road for fire escape—were not supported by the record. Gamble asserted that the record actually supported findings that the road was not an escape route, that the road would be dangerous and perhaps not passable in the event of a fire, and that numerous alternative fire escape routes existed. Gamble's memorandum was supported by an accompanying declaration from Cass Gebbers, including attachments, intending to refute many of the public comments cited and relied on by the hearing examiner. In denying Gamble's motion, the hearing examiner noted that the record was closed at the termination of the April 9 public hearing, except for a narrow issue not germane to Gamble's reconsideration material, and struck Gamble's submissions from the official record.

The County scheduled June 3, 2015, for a special public meeting of its BOCC to consider Gamble's petition. Prior to the meeting, each of the three County commissioners reviewed the engineer's report, the hearing examiner's report, and the

materials considered and made part of the record by those individuals. At the meeting, the commissioners commented they had reviewed the record, and briefly discussed the divergent opinions of the County's engineer and hearing examiner. In addition, Commissioner Campbell noted he reviewed documents that established that there were at least four alternate fire escape routes that were better routes than the road. Commissioner Campbell stated,

> And so in the recommendations from our County Engineer based on the fact that—that this road—I do not feel it is of benefit to the public there and it is useless.
> And, therefore, I move that we move forward with the vacation of this road that was requested by the petitioner.

CP at 913. Commissioner Kennedy seconded the motion. Commissioner DeTro opposed the motion.

The final order of vacation, signed by Commissioners Campbell and Kennedy, includes the following findings and order:

> **WHEREAS** the [BOCC finds] from the record that alternate routes exist out of the Chiliwist area,
>
> **WHEREAS** the [BOCC finds] the record discloses that the Three Devils Road has been impassable by vehicles due to rock slides, road being washed out by a flood event, road blocked by trees and logs crossing the road way,
>
> **WHEREAS** the [BOCC] finds the record discloses the use of the road is low and is not on the County's rotation for regular vehicle counts,

6

> **WHEREAS** the [BOCC] finds the record discloses the road has seen very little traffic as evidenced by photos included in the County Engineer's report.
>
> **NOW THEREFORE, IT IS HEREBY ORDERED BY THE BOARD** that [the road] is vacated.

CP at 1132-33.

On June 9, 2015, Coalition filed suit against the County and Gamble for injunctive and declaratory relief to void the BOCC's order to vacate the road. In addition, Coalition sought damages based on alleged violations of statutory and constitutional rights, including 42 U.S.C. § 1983, in addition to an award of reasonable attorney fees under 42 U.S.C. § 1988.

On August 24, 2015, Gamble filed a motion to dismiss or in the alternative for summary judgment. The uncontested material facts were that no member of Coalition owned any property on the portion of the vacated road nor was the road necessary to access any member's property.

On September 25, 2015, the trial court entered its written decision granting Gamble's motion for summary judgment. In its decision, the trial court held that Coalition had standing because of fire safety concerns to challenge the BOCC's order. The trial court further held that the BOCC's decision to vacate the road was a legislative

function, its review of the order was therefore narrow, and Coalition had failed to sufficiently assert any special circumstances warranting judicial review.

Coalition timely petitioned the Washington State Supreme Court for direct review. Gamble timely filed a cross petition, challenging the trial court's conclusion that Coalition had standing. Our high court subsequently transferred this case to us. Because we reject Coalition's arguments, we deem it unnecessary to reach the standing issue raised by the cross petition.

## ANALYSIS

This court reviews summary judgment orders de novo, engaging in the same inquiry as the trial court. *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 483, 78 P.3d 1274 (2003) (quoting *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002)). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered in a light most favorable to the nonmoving party. *Berger v. Sonneland*, 144 Wn.2d 91, 102-03, 26 P.3d 257 (2001). A nonmoving party must provide more than mere allegations or denials to rebut summary judgment; the party must provide specific facts showing genuine issues exist. CR 56(e). More than speculation or mere possibility is required to successfully oppose summary judgment. *Chamberlain v. Dep't of Transp.*, 79 Wn. App. 212, 215-16, 901 P.2d 344 (1995).

8

A bare allegation of fact by affidavit without any showing of evidence is insufficient to raise a genuine issue of fact for purposes of a motion for summary judgment. *Meissner v. Simpson Timber Co.*, 69 Wn.2d 949, 955-56, 421 P.2d 674 (1966). A genuine issue of fact cannot be raised by stated facts that are "not supported by authority or citations to the record." *Roger Crane & Assocs. v. Felice*, 74 Wn. App. 769, 779, 875 P.2d 705 (1994). Unsupported facts are no more than bare allegations and conclusions, and are not true evidence. *Id.*

A.     THE BOCC'S DECISION TO VACATE THE ROAD WAS A LEGISLATIVE FUNCTION

Coalition contends that the trial court erred when it held that the BOCC's action to vacate the road was a legislative function rather than a quasi-judicial function. Coalition argues that under the *Raynes v. City of Leavenworth*, 118 Wn.2d 237, 821 P.2d 1204 (1992) four-part test, road vacation is a judicial function. Coalition also argues that courts have historically reviewed road vacations by a writ of review, a process reserved for reviewing quasi-judicial actions.

The long-standing rule in Washington is that road vacation is a political function that belongs to municipal authorities, and is not judicially reviewable absent fraud, collusion, or interference with a vested right. *Capitol Hill Methodist Church of Seattle v. City of Seattle*, 52 Wn.2d 359, 368, 324 P.2d 1113 (1958) (city road); *Fry v. O'Leary*,

9

141 Wash. 465, 469, 252 P. 111 (1927) (city road); *Thayer v. King County*, 46 Wn. App. 734, 738, 731 P.2d 1167 (1987) (county road); *Banchero v. City Council of City of Seattle*, 2 Wn. App. 519, 523, 468 P.2d 724 (1970) (city road).

Coalition cites *Raynes*, 118 Wn.2d 237, and *Chaussee v. Snohomish County Council*, 38 Wn. App. 630, 689 P.2d 1084 (1984), in support of its argument that the BOCC's action of vacating the road was a quasi-judicial function. In *Raynes*, our high court set forth a four-part test for determining whether an action is quasi-judicial: (1) whether a court could have been charged with making the agency's decision, (2) whether the action is one which historically has been performed by courts, (3) whether the action involves the application of existing law to past or present facts for the purpose of declaring or enforcing liability, and (4) whether the action resembles the ordinary business of courts as opposed to that of legislators or administrators. *Raynes*, 118 Wn.2d at 244-45.

Application of the four-part test reinforces prior judicial holdings that vacation of county roads is a legislative function. First, RCW 36.87.080 vests the various county legislative authorities with the power to vacate roads by majority vote. Courts are not charged with vacating roads. Second, since at least 1937, when the legislature enacted chapter 36.87 RCW, the action of vacating county roads has been done by the various county legislative authorities, not courts. Third, the action of vacating county roads

10

involves obtaining an engineer's report, holding a hearing for public input, and the county legislative authority answering two simple statutory considerations—(1) whether the subject road is useless as part of the county road system, and (2) whether the public will be benefitted by its vacation and abandonment. RCW 36.87.020. Such a process does not involve the application of existing law to past or present facts for the purpose of declaring or enforcing liability. Although here, the hearing examiner issued findings of fact and conclusions of law in its recommendation to the BOCC, nothing in RCW 36.87.060(2) requires this. Fourth, the action of vacating county roads requires public input and opinion. Requesting public input in making decisions is not the ordinary business of courts; it is instead the ordinary business of legislators.

Finally, Coalition cites a few cases where plaintiffs have used the writ of review process to challenge a street or road vacation. For example, Coalition cites *DeWeese v. City of Port Townsend*, 39 Wn. App. 369, 693 P.2d 726 (1984). There, the city of Port Townsend vacated a city road that led to water. DeWeese petitioned the trial court for a statutory writ of certiorari, also known as a writ of review. A writ of review invokes a process to have a court declare that a lesser tribunal, board, or officer—*acting in a quasi-judicial function*—has erred. RCW 7.16.040.

We acknowledge there are a few plaintiffs who have used the writ of review process to challenge a street or road vacation and whose appeals have been considered by

11

the Court of Appeals. But none of these cases have actually held that the local legislative authority was performing a quasi-judicial function, nor have any of these cases overruled the authorities cited above.

For all of these reasons, we conclude the BOCC was performing a legislative function when it vacated the road.[2]

*Unsupported allegations of collusion and fraud*

Coalition does not argue that this court should apply the collusion, fraud, or interference with vested rights exceptions to review the BOCC's order. Nevertheless, Coalition, in other parts of its briefing, raises issues of collusion. We exercise our discretion to review the collusion issue as if it was properly raised. *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995).

The dictionary defines "collusion" as "a secret agreement between two or more parties to defraud a person of his rights often by the forms of law." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 446 (1993). Coalition relies on the following evidence to support its assertions of improper conduct by the County: (1) Commissioner Campbell had worked in real estate, and had advocated for vacating other roads prior to becoming an elected official, (2) Jon Wyss, a high-level Gamble employee who

---

[2] In light of this holding, we do not consider Coalition's argument that one BOCC commissioner violated the appearance of fairness doctrine, a doctrine explicitly inapplicable to legislative bodies engaged in legislative functions. RCW 42.36.030.

12

spearheaded Gamble's petition, once worked for the County, (3) in November 2014, when Gamble patriarch Dan Gebbers died, Commissioner Campbell gave a eulogy at the funeral and spoke of their mutual connections, (4) the Gebbers family may have given campaign contributions to the commissioners, and (5) the commissioners did not give deference to the hearing examiner's recommendation not to vacate the road.

The first two assertions emphasize potential unilateral bias only and, therefore, do not come within the definition of collusion. The second two assertions are overly speculative. When Gamble questioned Coalition members in discovery whether they had any evidence that any commissioner was improperly influenced by Gamble, not one member came forth with evidence beyond mere speculation. Speculation is insufficient to withstand summary judgment. *Chamberlain*, 79 Wn. App. at 215-16. As will be discussed in greater detail later, Coalition's fifth assertion fails because the law does not require the BOCC to give any deference to the hearing examiner's recommendation. Moreover, we note that the hearing examiner's recommendation was in conflict with the County engineer's recommendation.

Coalition makes one clear and nonspeculative assertion: prior to the final decision, Gamble had contacts with each commissioner, and various agents of the County government, concerning its petition to vacate the road. But as previously discussed, the BOCC's action to vacate the road was a legislative function. Legislators are expected to

13

have contacts with representatives both for and against pending legislation. Nothing prevented Coalition members or representatives from having similar contact with individual commissioners.

We note two reasons why the above assertion is insufficient to sustain a claim of collusion. First, although Gamble representatives met with individual commissioners, there is no evidence that Gamble sought to influence any commissioner by means other than by Gamble raising its legitimate concerns. If there was evidence of improper influence, bribery, or quid pro quo, our holding would be different. There simply is no evidence that the meetings were an attempt to defraud Coalition members of their rights.

Second, the contacts that occurred here—a few months before the scheduled BOCC meeting to vote on the petition—should be contrasted with the contacts in *Smith v. Skagit County*, 75 Wn.2d 715, 453 P.2d 832 (1969). *Smith* involved an application for a rezone. In *Smith*, the Skagit County Planning Commission conducted a public hearing, and during the hearing announced it would go into executive session. *Id.* at 742-43. The Planning Commission members then invited the rezone advocates to join them in private and deliberately excluded the rezone opponents. *Id.* In concluding that the Planning Commission acted improperly, the *Smith* court held that "the hearing lost one of its most basic requisites—the appearance of elemental fairness." *Id.* at 743. In contrast here, there is no allegation that the BOCC adjourned the public hearing and met with Gamble

14

in private. There is no evidence that the public hearing was improper. Nor is there any

evidence that the county commissioners or various agents of the County government

refused to meet with Coalition members or representatives.

We conclude Coalition has failed to state facts on which a rational trier of fact

might find that the BOCC's action of vacating the road was the result of collusion with

Gamble.

B.     NO DEFERENCE TO HEARING EXAMINER FINDINGS REQUIRED

Coalition argues that the BOCC was required to defer to the hearing examiner's

recommendation. However, Coalition does not cite any authority that would require

deference to the recommendation. The road vacation statute requires only a public

hearing:

> . . . [T]he county legislative authority may appoint a hearing officer to
> conduct a public hearing to consider the report of the engineer and to take
> testimony and evidence relating to the proposed vacation. Following the
> hearing, the hearing officer shall prepare a record of the proceedings *and a
> recommendation* to the county legislative authority concerning the
> proposed vacation. . . .

RCW 36.87.060(2) (emphasis added). No authority suggests that the hearing examiner's

recommendation is anything more than a recommendation.

Coalition cites to the Okanogan County Code (OCC) to demonstrate that a hearing

examiner in that county is required to enter written findings and conclusions after a

15

hearing. OCC 2.65.120(J). Regardless, the OCC does not require the commissioners to give special deference to the written report concerning a road vacation any more than the controlling statute.

C.     NO LIABILITY UNDER 42 U.S.C. § 1983

Coalition contends that the County's conduct violated the due process rights of Coalition members, and that the trial court improperly dismissed its 42 U.S.C. § 1983 claims. Coalition argues (1) it had a property or liberty interest in keeping the road open, and (2) the BOCC's action of vacating the road was arbitrary and capricious. We disagree with its first contention and do not address its second.

To sustain a § 1983 claim, Coalition must show "that some person deprived [its members] of a federal constitutional or statutory right, and that person must have been acting under color of state law." *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 117, 829 P.2d 746 (1992). "The threshold question in any due process challenge is whether the challenger has been deprived of a protected interest in life, liberty or property." *In re Pers. Restraint of Cashaw*, 123 Wn.2d 138, 143, 866 P.2d 8 (1994). Absent deprivation of a cognizable property or liberty interest, this court must dismiss a due process claim under § 1983. *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). A constitutionally protected property interest exists only where the plaintiff demonstrates that he possessed and was deprived of a reasonable

16

expectation or entitlement created and defined by an independent source such as federal or state law. *Id.* A subjective expectation on the part of the plaintiff that a benefit will be provided or continued does not create a property interest protected by the Constitution. *Clear Channel Outdoor v. Seattle Popular Monorail Auth.*, 136 Wn. App. 781, 784-86, 150 P.3d 649 (2007).

### 1. *No property interest*

Coalition asserts its members have a property interest in keeping the road open. Property owners who do not abut and whose access is not destroyed or substantially affected, have no vested rights that are substantially affected. *Capitol Hill Methodist Church of Seattle*, 52 Wn.2d at 365. No Coalition member owns property that abuts the road, and the vacation of the road does not affect any Coalition member's access to his or her own property. Coalition alleges generally that the road's use or potential use is for recreation or fire escape. But such considerations are insufficient because they are not expectations defined by an independent source such as federal or state law. We conclude Coalition fails to allege any cognizable property interest in the road.

### 2. *No liberty interest*

Coalition asserts its members have a liberty interest in keeping the road open. A liberty interest may arise from the Constitution, from guarantees implicit in the word "liberty," or from an expectation or interest created by state laws or policies. *In re Pers.*

17

*Restraint of Mattson*, 166 Wn.2d 730, 737, 214 P.3d 141 (2009). To establish a liberty interest in keeping the road open, Coalition relies on *Kent v. Dulles*, 357 U.S. 116, 78 S. Ct. 1113, 2 L. Ed. 2d 1204 (1958). In *Kent*, the State Department denied plaintiff a passport when he refused to submit an affidavit denying that he was a member of the Communist Party. *Id.* at 117-19. The Supreme Court recognized that the "right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment." *Id.* at 125. The Court stressed the importance of owning a passport in order to establish citizenship to reenter the country. *Id.* at 121. The right to travel outside of the United States and then reenter is of a different nature and magnitude when compared to the expectation of traveling on a stretch of primitive unimproved road. Coalition does not cite any authority that traveling on a street or road is recognized as being implicit in the word "liberty." If we were to recognize such a right, no street or road vacation would be possible. We decline to go where no court has gone before.

We conclude the trial court did not err when it dismissed Coalition's 42 U.S.C. § 1983 claims.

18

No. 34585-8-III
*Coalition of Chiliwist v. Okanogan County*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Korsmo, J.

Pennell, J.

19